JOHN O. OSTERLUND *v.* STATE OF CONNECTICUT.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued January 5—decided February 3, 1943.

*John O. Osterlund,* pro se, the appellant (plaintiff).

*Thomas J. Conroy,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellee (defendant).

MALTBIE, C. J.   The plaintiff, on January 9, 1940, while working as a carpenter in the employ of a contractor, in making repairs at the Cedarcrest Sanatorium in Newington, an institution owned and operated by the state, suffered a severe injury to his heel as a result of a fall from a scaffolding.   By a finding and award filed March 30, 1940, the compensation commissioner for the first district, before whom the matter was heard, found that he was entitled to compensation against the defendant as principal em-

ployer under the provisions of § 5230 of the General Statutes and ordered the defendant to pay that compensation at the rate of $17.50 a week "until it can be shown that the claimant's incapacity has decreased or ceased." The plaintiff had been employed at the time of the injury less than a net period of two calendar weeks, and the amount of the award was based on a finding that the average weekly wage prevailing in the community for carpenters was $35. General Statutes, § 5238, amended, § 704f of the Supplement of 1941. On January 15, 1941, a further hearing was held, which in the transcript of the proceedings is stated to have been upon plaintiff's application for an increase in compensation and for a change in doctors. From a letter printed in the record it appears that in the notice of that hearing the commissioner of the first district had stated that the commissioner of the second district had been designated to hear the matter, and that the plaintiff protested against the latter commissioner hearing it because of something alleged to have taken place about two years before when he had had presented to him a question of a waiver of compensation under § 5267 of the General Statutes, in connection with a back injury which the plaintiff had previously suffered. The commissioner designated, however, heard the matter, and on January 20, 1941, filed a supplemental finding and award in which he found that there was no ground for increasing the compensation and that, as the doctors who testified agreed that the plaintiff needed no further medical treatment, there was no occasion to direct a change of doctors; and he further found that the maximum improvement in the injured heel had been reached, and therefore awarded compensation upon the basis of 50 per cent permanent partial loss of function for seventy-eight weeks at the rate of $17.50 a week. General Statutes,

§ 5237, amended, § 1328e of the Cumulative Supplement of 1939. From that award the plaintiff appealed to the Superior Court and, from the dismissal of the appeal, to this court. Thereafter he made a motion to open the judgment, and from its denial also appealed; but, as that denial is not a final judgment from which an appeal lies, we disregard it. *First National Bank* v. *Ferguson,* 129 Conn. 374, 376, 28 Atl. (2d) 87.

The plaintiff, a layman, prosecuted the matter in his own behalf in the Superior Court and before us. He has filed no brief in this court, contenting himself largely with the presentation of his claims in the various papers printed in the record and in the file of the Superior Court. In reviewing the matter, we shall follow our usual liberal policy where a layman appears pro se, and consider his claims so far as they are fairly presented upon the record, an approach to the case which counsel for the defendant, desiring to be entirely fair to the plaintiff, have themselves adopted. *Higgins* v. *Hartford County Bar Association,* 111 Conn. 47, 52, 149 Atl. 415.

The first two reasons of appeal in the Superior Court were that the commissioner for the first district should have heard the motions presented at the second hearing. If the commissioner, on adequate grounds, considered himself disqualified, it was his duty to designate another commissioner to hear the matter; General Statutes, § 5242, amended § 1329e of the Cumulative Supplement of 1939; *Saddlemire* v. *American Bridge Co.,* 94 Conn. 618, 627, 110 Atl. 63; *Glodenis* v. *American Brass Co.,* 118 Conn. 29, 38, 170 Atl. 146; and, the record being silent as to the grounds for this action, we must assume them to have been sufficient. Even if we regard as correct the statements in the plaintiff's letter remonstrating against the desig-

nation of the commissioner of the second district to hear the matter, they fail to show any adequate reason why he could not hear and dispose of it fairly and without prejudice.

The record makes it evident that the increase in compensation which the plaintiff claimed in his motion was based not upon a change in the extent of his incapacity or any changed conditions of fact which might affect the award but upon further evidence which he desired to offer bearing upon the finding of the average weekly wage of carpenters prevailing in Newington at the time of his injury. While the motion was not technically in the right form, the defendant made no objection at the hearing and we shall disregard the fact that it was defective in this respect. *Saddlemire* v. *American Bridge Co.*, supra. The commissioner ruled that, as no appeal had been taken from the original finding and award, the finding was res adjudicata and must stand. The motion was in effect one for a hearing for the consideration of new testimony which the plaintiff desired to offer and this ruling of the commissioner was incorrect. *Reilly* v. *State,* 119 Conn. 217, 220, 175 Atl. 582. Upon such a motion, the ultimate question is whether it appears likely that an injustice has been done and that upon a rehearing a different result would be reached. *Olivieri* v. *Bridgeport,* 126 Conn. 265, 270, 10 Atl. (2d) 770.

At the original hearing it appeared that the wages paid the plaintiff were 87½ cents an hour for the hours he worked, and there was testimony that, taking into account days when a carpenter, due to weather conditions, could not work, $35 a week would be fair average earnings for a carpenter. If, as appears from the evidence, it is a usual incident of employment of carpenters in the locality in question who are paid

upon the basis of a daily wage that they would lose time due to weather conditions, it was proper for the commissioner to take that fact into consideration in determining the average weekly wage. *Olivieri* v. *Bridgeport,* supra. The plaintiff was in fact receiving $7 for each eight-hour day. The only new evidence offered was two letters, one from the state labor wage board that the rate of pay for carpenters in Newington in effect on November 19, 1940, was $1.125 cents an hour, and one from the state department of public works that that was the rate paid carpenters at the sanatorium in July and September, 1940. The commissioner found in effect that this evidence would not be likely to change the finding as to the prevailing average weekly wage paid carpenters in the community at the time of the plaintiff's injury. Under these circumstances we would hesitate to hold that the commissioner's action in denying the motion was erroneous. The denial of the motion for a change in doctors found sufficient justification in the commissioner's finding that the plaintiff required no further medical treatment.

The record presents, however, one serious error on the part of the commissioner. It is fundamental in proper judicial administration that no matter shall be decided unless the parties have fair notice that it will be presented in sufficient time to prepare themselves upon the issue. The only matters properly before the commissioner were the two motions to which we have referred. Nevertheless the commissioner, upon his own initiative, finding that the maximum improvement in the injured foot had been reached, made an award in effect terminating the weekly payments being made for partial incapacity and granting the plaintiff in lieu thereof specific compensation on the basis of a permanent partial loss of function of the foot.

It appears from the record that, in the course of the hearing, the plaintiff remonstrated against such action, stating that he did not come prepared to meet that issue. It may be that had the matter been properly before the commissioner no different result would have been reached, but we cannot justify so serious a breach of a fundamental requirement of due process of law on that ground.

As this requires a finding of error we consider another matter which is within the plaintiff's assignments of error if broadly construed and which the commissioner's finding, if read in the light of the transcript, presents. The commissioner proceeded upon the ground that, the maximum of improvement in the foot having been attained, there was no other course he could take except to award specific compensation in place of weekly compensation for total incapacity. The statute concerning incapacity in effect at the time of the injury provided that "in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation" a certain definite compensation should be paid based upon one-half of the average weekly earnings of the employee for a certain number of weeks "for the loss . . . or the complete and permanent loss of the use of" certain members of the body, including a foot; but it then goes on to provide: "In case the injury shall consist of the loss of a substantial part of a member resulting in a permanent partial loss of the use of the member, or, in case the injury shall result in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other compensation, award to the injured person such a proportion of the sum herein provided for the total loss of, or loss of the use of, such member or for incapacity or both as shall represent the proportion of total loss

or loss of use found to exist." General Statutes, § 5237, amended, § 1328e of the Cumulative Supplement of 1939.

As pointed out in *Panico* v. *Sperry Engineering Co.*, 113 Conn. 707, 156 Atl. 802, previous to an amendment passed in 1919 the statute had provided that the specific compensation should be "in lieu of all other payments" for compensation, and the amendment merely added the words "in addition to the usual compensation for total incapacity." Under the act as it stood previous to the amendment, we held that compensation for partial incapacity should be paid until the maximum improvement had been reached, at which time the right to the specific indemnity first became due. *Wrenn* v. *Connecticut Brass Co.*, 96 Conn. 35, 112 Atl. 638. The amendment could not have been intended to cut off an award of weekly compensation permissible previous to that time. Under the present law, in case of total incapacity resulting from an injury which in itself has produced the loss or the permanent loss of use of one of the members specified in the statute, we have held that the period for the payment of weekly compensation continues only until the determination of the amount of specific compensation under these provisions and the right to have that awarded arises when nothing further remains to be done to improve or heal the member. *Panico* v. *Sperry Engineering Co.*, supra, 714. In that case there was a total incapacity due to an injury to the plaintiff's arm which, at the time of the final hearing, was found to have resulted in a permanent partial loss of the use of the arm; the plaintiff had been paid weekly compensation for total incapacity for five hundred and eighteen weeks of the five hundred and twenty weeks which would have been the maximum time during which that compensation could be paid. General

Statutes, § 5236, amended, § 1327e of the Cumulative Supplement of 1939. The plaintiff sought an additional award for permanent partial loss of function which the commissioner denied. We sustained him in that ruling, stating (p. 716): "The record does not disclose at what date the condition of the plaintiff's arm reached the stage of ultimate improvement and when, in consequence, the period of compensation for incapacity would have terminated and the right to specific indemnity for proportionate loss of use accrued. It is beyond reasonable possibility, however, that this period continued for such a time that the compensation therefor, plus the specific compensation which the commissioner, within his discretion, could have awarded would, at most, aggregate more than the amount (half of the average weekly wage for five hundred and eighteen weeks) which the plaintiff had already received under the voluntary agreement at the time of his application the decision upon which is appealed from. Therefore no advantage could be expected from further proceedings."

*Stapf* v. *Savin*, 125 Conn. 563, 7 Atl. (2d) 226, presented a similar situation except that the commissioner found that the plaintiff had reached the maximum improvement. There had been a total incapacity due to an injury to the plaintiff's leg, which had resulted in a 25 per cent permanent loss of its use. The specific claim of the plaintiff, as shown by the record of that case, was that he was entitled to receive weekly compensation for total incapacity until it ceased or diminished. A-135 Records & Briefs, p. 249. The commissioner ruled that under the provisions of the statute he was compelled to award only the specific compensation provided for the partial loss of the use of the leg. We specifically sustained this ruling of the commissioner, principally upon the basis

of the decision in the *Panico* case. Further considera-
tion has led us to the conclusion that the commis-
sioner, and this court, went further than was necessary
to meet the claim of the plaintiff in that case, and
further than the statute justifies. Where there is a
total incapacity followed by a total loss of a member
or a permanent loss of function, this would be so; but
where there is a total or partial incapacity followed
by a permanent partial loss of function the situation
is governed by the portion of the statute we have
quoted, which provides that, in such a case, the com-
missioner "may, in his discretion, in lieu of other
compensation" make an award of specific compensa-
tion. The thought back of this provision was evi-
dently that there might be, in case of a partial loss of
function, a great disproportion between the amount of
specific compensation provided and the actual effect
of the injury, either from the standpoint of the em-
ployee's earning capacity or the physical impairment
he suffered. Thus, if a desk worker suffered such an
injury as did the plaintiff in this case, it might not at
all affect his earning capacity and might constitute a
very slight permanent injury from the standpoint of
physical impairment. In other instances the reverse of
this might be true. In the case of a partial loss of
function of one of the members specified in the statute,
the commissioner is called upon, when the stage of
maximum improvement has been reached, to exercise
his sound judgment in deciding whether to award
specific compensation upon the basis fixed in the
statute or to permit the weekly compensation for in-
capacity to continue. In so far as *Stapf* v. *Savin*,
supra, suggests the contrary, it is overruled. That the
commissioner was called upon to exercise this discre-
tion points the significance of his error in awarding
specific compensation to the plaintiff without notice

to him that the matter would be considered at the hearing.

No purpose would be served by considering the other claims of error.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to sustain the appeal and return the case to the commissioner of the first district for further proceedings according to law.

In this opinion the other judges concurred.