## ANNE M. CONNOLLY *v.* JOSEPH F. CONNOLLY
## (10750)

SPEZIALE, C. J., PARSKEY, SHEA, GRILLO and SPONZO, Js.

Argued June 9—decision released September 13, 1983

*Elaine S. Amendola,* for the appellant-appellee (plaintiff).

*Edward F. Czepiga II* and *Daiga G. Osis* for the appellee-appellant (defendant).

SHEA, J. The genesis of this appeal and cross appeal was a motion by the plaintiff to modify child support and alimony awards which were part of an initial dissolution decree. The facts are undisputed. The marriage of the parties was dissolved in 1974 with the plaintiff wife retaining custody of the three minor children. The defendant husband was ordered to pay $600 monthly alimony and $350 monthly child support for each child. In March, 1981, the plaintiff moved to increase both child support[1] and alimony. No motion to decrease or terminate child support or alimony was ever filed by the defendant. After a hearing, the trial court, *Geen, J.,* concluded that there had been a substantial change in circumstances which justified an increase in child support to $115 per week per child. In addition, citing General Statutes § 46b-86, the court terminated the plaintiff's right to periodic alimony as of June 1, 1981. An appeal from the order terminating alimony was taken by the plaintiff.

On July 28, 1981, the plaintiff filed a motion to adjudge the defendant in contempt for failure to continue alimony payments in accordance with the original dissolution decree on the ground that Practice Book § 3065 stayed the termination order during the pendency of her appeal. The defendant opposed the motion. Ten months later, while the first motion was still under consideration by the court, *Maiocco, J.,* the plaintiff filed a second contempt motion for the failure to pay alimony from June, 1981, to March, 1982. The trial

---

[1] At the time of trial only two children were still minors. Now only the youngest child has not reached majority.

court, *Gerety, J.,* found the defendant in contempt and ordered him to pay an arrearage of $6000, which had accrued from June 1, 1981, to the clerk of the court and to make all future alimony payments to the clerk in accordance with the initial decree pending the determination of the plaintiff's appeal. In accordance with an agreement of the parties, in April, 1982, the court modified its order to permit the money to be deposited in an interest bearing escrow account managed by the defendant's attorney.

In her appeal the plaintiff presents four issues: (1) whether the trial court had the authority to terminate alimony when ruling only on a motion to increase alimony; (2) whether the trial court denied the plaintiff due process of law by terminating alimony pursuant to General Statutes § 46b-86 (b), the "cohabitation" statute, without the special notice and hearing required by that statute; (3) assuming the trial court complied with the procedural prerequisites of General Statutes § 46b-86 (b), whether the trial court abused its discretion in ordering the termination of alimony under that section; and (4) whether the exclusion of the plaintiff's evidence regarding voluntarily incurred expenses to support an emancipated child constituted harmful error.

In his cross appeal, the defendant seeks to reverse an adjudication of contempt and to recover the monies paid as alimony since June 1, 1981. He claims error on the grounds (1) that the trial court's order terminating alimony was not automatically stayed pursuant to Practice Book § 3065; (2) that the legal effect of a § 3065 stay on orders terminating alimony is so unclear that the defendant's refusal to pay alimony in accordance with the initial divorce decree after July 1, 1981, cannot be deemed contemptuous behavior; and (3) that the trial court should not have ruled upon the contempt

motion when a similar motion for failure to pay alimony during June and July of 1981 was pending before another trial court.[2]

Regarding the appeal we find that the trial court erred in terminating the plaintiff's alimony. On the cross appeal, we conclude that the order terminating alimony was stayed pursuant to Practice Book § 3065 and the alimony payments made by the defendant into the escrow account are owing to the plaintiff. Nevertheless, we reverse the lower court's adjudication of contempt because it was rendered prematurely.

I

At the hearing on the motion to increase child support and alimony, the plaintiff, a registered nurse, testified on direct examination that since the dissolution she had held several jobs, each of which she had left for reasons relating to the necessity of properly caring for her minor children. She also stated that she was currently receiving unemployment compensation benefits and was seeking part-time employment which would permit her to return home in the afternoon to supervise her children's after school activities, and to have the weekends free to spend with her children. On cross-examination, the defendant elicited from the plaintiff certain information, which for the purposes of appellate review need only be generally summarized. During the two previous summers, the plaintiff had spent nearly every weekend on the boat of a man to whom she was

[2] After the defendant filed his cross appeal, the plaintiff amended her appeal to claim as error the ruling of the trial court, *Gerety, J.*, that the defendant pay alimony to the clerk of the court pending the determination of the plaintiff's appeal rather than to the plaintiff directly. Since we today overrule the trial court's, *Geen, J.*, termination of alimony and hold that Practice Book § 3065 does stay trial court orders modifying alimony, the plaintiff is no longer aggrieved by the trial court's decision to hold the monies in escrow. Accordingly, we decline to review this claim.

not related. After the first summer, only her youngest son accompanied her on these boat outings, and, then, only on an irregular basis. The plaintiff's companion, at times, spent up to four nights a week at the plaintiff's house. When staying at the plaintiff's house he contributed $45 to $50 weekly toward the purchase of food. In addition, he had also purchased holiday groceries for the plaintiff and her children and had loaned the plaintiff money to paint her house. The plaintiff had also accompanied her companion on several vacations. The plaintiff objected only twice to the line of inquiry resulting in this testimony. These objections were overruled on the grounds that the testimony was relevant to the financial needs of the plaintiff or to the credibility of her claim that her reluctance to secure full-time employment was based on her desire to spend more time with her children.

The trial court terminated the periodic alimony "pursuant to [General Statutes] § 46b-86." The decision to terminate was clearly based on the testimony elicited during the cross-examination of the plaintiff. As articulated in the memorandum of decision, the trial court found "that the plaintiff is co-habiting in her home with a male person who quite patently has more than the average person's financial means . . . . The plaintiff also has a profession which she chooses not to exercise under the guise of being a good mother. The court sees no reason for the defendant to support the plaintiff who wishes the best of two worlds, the company, entertainment by, and some admitted financial contributions from a co-habiting able male as well as full support from a former spouse."

"Our review of a trial court's decision on a motion for modification of periodic alimony is limited to deciding whether the trial court has abused its discretion. *Hardisty* v. *Hardisty,* 183 Conn. 253, 260, 439 A.2d

307 (1981); *Koizim* v. *Koizim,* 181 Conn. 492, 497, 435
A.2d 1030 (1980); *Jacobsen* v. *Jacobsen,* 177 Conn. 259,
263, 413 A.2d 854 (1979)." *Kaplan* v. *Kaplan,* 185
Conn. 42, 46, 440 A.2d 252 (1981) *(Kaplan I).* Gen-
eral Statutes § 46b-86[3] governs motions to modify ali-
mony and support judgments or orders. To the extent
modification is not precluded by the initial decree,
General Statutes § 46b-86 (a) permits a court to con-
tinue, set aside or modify any final order for peri-
odic or pendente lite alimony or support "upon a show-
ing of a substantial change in the circumstances of
either party." To warrant a modification, the substan-
tial change in circumstances must have occurred sub-
sequent to the entry of the decree and must have been
uncontemplated by the parties at the rendition of the
initial decree. *Sanchione* v. *Sanchione,* 173 Conn. 397,
407, 378 A.2d 522 (1977); *Grinold* v. *Grinold,* 172 Conn.
192, 195, 374 A.2d 172 (1976). General Statutes
§ 46b-86 (b) is the so-called "cohabitation" statute,
which was enacted four years after § 46b-86 (a)[4] to "cor-

[3] "[General Statutes] Sec. 46b-86. (Formerly Sec. 46-54). MODIFICATION
OF ALIMONY OR SUPPORT ORDERS AND JUDGMENTS. (a) Unless and to the
extent that the decree precludes modification, any final order for the peri-
odic payment of permanent alimony or support or alimony or support pen-
dente lite may at any time thereafter be continued, set aside, altered or
modified by said court upon a showing of a substantial change in the cir-
cumstances of either party. This section shall not apply to assignments under
section 46b-81 or to any assignment of the estate or a portion thereof of
one party to the other party under prior law.

"(b) In an action for divorce, dissolution of marriage, legal separation
or annulment brought by a husband or wife, in which a final judgment has
been entered providing for the payment of periodic alimony by one party
to the other, the superior court may, in its discretion and upon notice and
hearing, modify such judgment and suspend, reduce or terminate the pay-
ment of periodic alimony upon a showing that the party receiving the peri-
odic alimony is living with another person under circumstances which the
court finds should result in the modification, suspension, reduction or ter-
mination of alimony because the living arrangements cause such a change
of circumstances as to alter the financial needs of that party."

[4] Subsection (a) of General Statutes § 46b-86 was enacted in 1973. Pub-
lic Acts 1973, No. 73-373, § 27. Subsection (b) was enacted in 1977. Public
Acts 1977, No. 77-394.

rect the injustice of making a party pay alimony when his or her ex-spouse is living with a person of the opposite sex, without marrying, to prevent the loss of support." H.B. No. 6174, 1977 Sess. (Statement of Purpose). Under § 46b-86 (b), "the superior court may, in its discretion and *upon notice and hearing* . . . suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person" and that this arrangement has caused "a change of circumstances" which "alter[s] the financial needs" of the alimony recipient. (Emphasis added.) As we have noted, the provision places the burden of proof on the party moving for such a modification. *Kaplan* v. *Kaplan,* supra, 45.

In the present case, the parties concede that no written or oral motion invoking § 46b-86 (b) was made to the court by the defendant.[5] The plaintiff claims that without written notice that the issue of termination pursuant to § 46b-86 (b) was before the court, the trial court was without authority to terminate alimony on that ground. We agree.

---

[5] The plaintiff has asserted both in her brief and at oral argument that no oral or written motion to terminate alimony was submitted by the defendant. The defendant has not challenged these assertions. Our review of the file and the transcripts supports the plaintiff's claim. During the cross-examination of the plaintiff concerning whether the plaintiff's companion had ever spent any time at her home, the following exchange occurred:

"Mr. DePiano [defense counsel]: I have no objection to that.

"There is a statute on this. I can give you the statute number, if you want it. I'm sure your Honor is aware of it. I [. . . .]

"The Court: In any event, he has spent nights at your home; hasn't he?

"The Witness [plaintiff]: Yes."

The defendant does not contend that this oblique reference to General Statutes § 46b-86 (b) in the midst of trial was sufficient to put the plaintiff on notice that the court was considering terminating her alimony pursuant to that provision.

By its very terms, General Statutes § 46b-86 (b) mandates that when the statute is to be invoked notice must be given to the parties and a hearing held on the claim. Our rules of practice require that every motion directed toward pleading or procedure, unless relating to procedure during the course of a trial, be in writing. Practice Book § 196; *Winick* v. *Winick,* 153 Conn. 294, 297, 216 A.2d 185 (1965); *New Haven Sand Blast Co.* v. *Dreisbach,* 104 Conn. 322, 329–30, 133 A. 99 (1926). The purpose of requiring written motions is not only the orderly administration of justice; see *Malone* v. *Steinberg,* 138 Conn. 718, 721, 89 A.2d 213 (1952); but the fundamental requirement of due process of law. *Winick* v. *Winick,* supra, 299. In *Osterlund* v. *State,* 129 Conn. 591, 30 A.2d 393 (1943), this court considered a factually similar case. The plaintiff in *Osterlund,* a worker who had suffered an injury resulting from his employment as a carpenter, had sought and received an award for the partial incapacity resulting from his injuries. Subsequently, the plaintiff filed two motions, one seeking an increase in compensation based on additional evidence of the prevailing wage rate and the other requesting a change of doctors. The trial court heard both motions and denied relief. In addition, the trial court further concluded that the plaintiff's injury had improved to the greatest extent possible and made an award terminating weekly payments and granting the plaintiff specific compensation on the basis of a permanent partial loss of certain physical functions. During the course of the hearing the plaintiff apparently learned of the trial court's intent to consider the issue of compensation for permanent loss and protested that he was unprepared to discuss the issue. Id., 596–97. Finding the trial court's sua sponte consideration of permanent disability to have been erroneous, we explained, "[i]t is fundamental in proper judicial administration that no matter shall be decided unless the

parties have fair notice that it will be presented in sufficient time to prepare themselves upon the issue." *Osterlund* v. *State,* supra, 596.

Conceding that no written motion requesting the termination was ever made and apparently unable to demonstrate that the issue of alimony termination was fully and fairly litigated, the defendant nevertheless contends that there was no deficiency in the notice afforded the plaintiff regarding the trial court's consideration of § 46b-86 (b). According to the defendant, by attempting to increase periodic alimony pursuant to § 46b-86 (a) the plaintiff was put on constructive notice as to the authority of the court to terminate alimony under § 46b-86 (b).[6]

We previously have held that a party to a dissolution action with notice, however imprecise, that a property distribution may be considered by the court is charged with notice of the trial court's authority pursuant to General Statutes § 46b-81, which provides that when entering a dissolution decree a court "may assign to either the husband or wife all or any part of the estate of the other . . . without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect." *Tsopanides* v. *Tsopanides,* 181 Conn. 248, 250, 435 A.2d 34 (1980); *Hodge* v. *Hodge,* 178 Conn. 308, 315–16, 422

---

[6] The defendant also argues that by seeking to increase alimony pursuant to General Statutes § 46b-86 (a) the plaintiff had constructive notice that the trial court could reduce or terminate alimony pursuant to authority conferred by that very provision. As we have indicated, there can be no reasonable contention that the trial court did not rely on General Statutes § 46b-86 (b) to justify terminating the alimony award and, as such, the issue raised by the defendant is not properly before us. We note, however, that once terminated, alimony cannot be restored by subsequent judicial action. Consequently, alimony termination is the deprivation of an interest protected by the principles of due process and, therefore, the issue of termination must be fully and fairly litigated.

A.2d 280 (1979); see also *LaCroix* v. *LaCroix,* 189 Conn. 685, 689, 457 A.2d 1076 (1983). These decisions, on which the defendant relies, are based on the commonsense notion that once a party is aware that a particular subject matter is involved in the dissolution action, he is charged with knowledge of the court's general authority in such matters. By its terms, § 46b-81 is applicable in any dissolution action and requires no action to be taken by either party.

In contrast, General Statutes § 46b-86 (a) is a narrowly written statute which must be specifically invoked and which permits a court to act only if certain prerequisites have been met. The authority of the court to refashion the awards of alimony and support under § 46b-86 (a) is limited by the concept that the initial decree equitably distributed the joint estate of the parties and that this equitable balance is not to be disturbed unless the party moving for modification has met the burden of proving a change in circumstances unforeseen at the time of the initial decree. A court has no authority under § 46b-86 (a) to modify a prior distribution of property made pursuant to General Statutes § 46b-81. It is quite evident that § 46b-86 (a) does not confer upon a court the same breadth of authority that it possessed at the time the initial dissolution decree was rendered. Because § 46b-86 (a) is narrowly written it cannot reasonably be construed as giving notice of grants of judicial authority outside its own parameters. Moreover, the principle of constructive notice cannot be extended to subsection (b) of § 46b-86 because to do so would negate the notice and hearing requirements expressly provided therein by the legislature.

We find that the plaintiff had insufficient notice that the issue of alimony termination pursuant to § 46b-86 (b)

was being litigated at the hearing below.[7] The public allegation that a woman is living with a man out of wedlock and is enjoying a financial benefit from that arrangement is one which is not lightly made and, even in this day, may carry an innuendo of disrepute. In addition, a judicial determination that such an allegation is true may have repercussions affecting persons other than the litigants and matters other than alimony. These considerations, which are reflected in the special notice and hearing requirements, support the conclusion that the trial court cannot on its own initiative consider § 46b-86 (b) as a ground for the termination of alimony. We hold today that General Statutes § 46b-86 (b) is a separate and independent statutory basis for the modification of alimony and is a claim which must be raised in a written motion by the party seeking to modify the award of periodic alimony.[8]

## II

Two basic issues are raised on the cross appeal from the trial court's decision to hold the defendant in contempt for failing to pay the plaintiff alimony in accord-

[7] It cannot reasonably be contended that such a lack of notice did not prejudice the plaintiff or that her trial strategy would not have been different had sufficient notice been given. Moreover, we do not require proof of a different outcome where "so serious a breach of a fundamental requirement of due process of law" has occurred. *Osterlund* v. *State*, 129 Conn. 591, 597, 30 A.2d 393 (1943).

[8] Since we have held that the trial court's termination of alimony pursuant to General Statutes § 46b-86 (b) was erroneous we need not reach the plaintiff's other claims of error relating to the authority of the trial court to terminate periodic alimony. Her remaining claim, that evidence of voluntarily incurred expenses for support of an emancipated child was improperly excluded by the trial court as irrelevant to her claim for increased alimony, is unmeritorious. In *Cariseo* v. *Cariseo*, 190 Conn. 141, 143, 459 A.2d 523 (1983), we held that a substantial change in circumstances supporting modification of an alimony award cannot be predicated on financial obligations incurred from the maintenance of adult children in the family home while they were attending college. We deem this holding as dispositive of the plaintiff's evidentiary claim.

ance with the initial decree during the pendency of her appeal from the order of termination and to require the arrearage and future alimony payments pending the resolution of the appeal be made to the clerk of the court. These are (1) whether the automatic stay provisions of Practice Book § 3065 are applicable to judgments rendered on motions to modify alimony, and (2) whether the trial court's adjudication of contempt was proper.

Practice Book § 3065 provides that "[i]n all actions," with minor exceptions not pertinent here, "proceedings to enforce or carry out the judgment shall be stayed for twenty days" or until the period for taking an appeal has expired, and, if an appeal has been taken, that the "proceedings shall be stayed until the final determination" or "until ten days after the decision [rendered by the Supreme Court on the case] is announced." This stay may be terminated upon motion and hearing, "if the judge who tried the case is of the opinion that . . . the appeal is taken only for delay or that the due administration of justice requires him to do so . . . ." No such termination was requested in this case.

Despite the plain language of Practice Book § 3065, the defendant claims that the automatic stay is inapplicable to alimony awards. The defendant first claims that an alimony award rendered with a dissolution decree does not survive a subsequent judgment terminating alimony and thus the automatic stay cannot "revive" the initial alimony obligation. The premise of this argument is that since an alimony award is modifiable pursuant to § 46b-86 it is analogous to a pendente lite alimony order, which we have held does not survive the rendition of judgment. See *Yontef* v. *Yontef,* 185 Conn. 275, 291, 440 A.2d 899 (1981); *Tobey* v. *Tobey,* 165 Conn. 742, 745, 345 A.2d 21 (1974); *Saunders* v. *Saunders,* 140 Conn. 140, 146, 98 A.2d 815

(1953). This analogy is inappropriate. Pendente lite orders necessarily cease to exist once a final judgment in the dispute has been rendered because their purpose is extinguished at that time. An alimony award rendered pursuant to such a judgment constitutes a final resolution of the initial dispute and is not transformed into a temporary order merely because there is continuing jurisdiction to modify it at a later date. See *Yontef* v. *Yontef,* supra, 292–93; *Krasnow* v. *Krasnow,* 140 Conn. 254, 261–63, 99 A.2d 104 (1953).

More importantly, the defendant's argument ignores *Garrison* v. *Garrison,* 190 Conn. 173, 460 A.2d 945 (1983), in which this court recently indicated that an award of alimony made as part of a dissolution decree is stayed pursuant to Practice Book § 3065. In holding that sua sponte trial court orders which negated the stay provisions of § 3065 were inappropriate where they concerned matters other than custody, we stated, "[i]f the prevailing party wants to have . . . the judgment become immediately effective, he or she may make a motion to terminate the stay pursuant to Practice Book § 3065, and obtain a prompt resolution of the question." Id., 183.

The defendant's claim that an order terminating alimony pursuant to § 46b-86 (a) should be analogized to certain welfare statutes which preclude the stay of support orders pending an appeal does not limit the precedential effect of *Garrison* upon this case. The statutes relied upon by the defendant, General Statutes § 46b-206, part of the Uniform Reciprocal Enforcement of Support Act, and General Statutes § 46b-215 (d), part of a statute to enforce family support, apply to situations factually inapposite to the position of the defendant. General Statutes § 46b-215 (d) applies only to enforcement orders premised on a valid order of alimony. See General Statutes §§ 46b-190, 46b-180 (3).

The other statute, § 46b-206, which permits a court to make or enforce orders against a respondent with a legal duty to support family members is on its face inapplicable to alimony orders rendered upon dissolution. Moreover, that the legislature has decided that the public interest, and perhaps the public purse, is best served in certain circumstances by requiring the payment of support during the pendency of an appeal, in no way assists this defendant who sought to avoid payment of his own alimony obligation during the pendency of the plaintiff's appeal. Although *Garrison* v. *Garrison* dealt with an alimony award made in conjunction with a dissolution decree, its ruling on the effect of Practice Book § 3065 is no less applicable to a judgment or order rendered on a motion filed pursuant to § 46b-86.[9]

Finally the defendant claims that to require him to pay alimony during the pendency of the plaintiff's appeal is unfair because, should the plaintiff be unsuccessful, he could never recoup the monies which had been paid during the interim and which the trial court had decided he should not be required to pay. We note initially that the defendant never petitioned the trial court to terminate the stay as provided by Practice Book § 3065 and therefore his claim of injustice or hardship is not properly before us.[10] Common sense, however, dictates that a stay invariably works some hardship on the successful party by denying that party the immediate fruits of his or her victory. Of course, the

---

[9] The defendant's suggestion that the modification order as regards the termination of alimony was not stayed pursuant to Practice Book § 3065 because the parties chose to recognize the immediate efficacy of another portion of the order requiring increased child support is without merit. *Garrison* v. *Garrison*, 190 Conn. 173, 183, 460 A.2d 945 (1983).

[10] If the defendant had requested the court to terminate the stay on grounds of alleged injustice and the trial court had refused, he could then have sought appellate review of that decision by filing a motion to review under Practice Book § 3107.

degree of hardship will vary in the particular circumstances. Nevertheless, we see little distinction between the position of the defendant and others who are unfavorably affected by Practice Book § 3065. See, e.g., *Garrison* v. *Garrison,* supra, 183 n.7.

Despite our conclusion that the modification order was stayed pursuant to Practice Book § 3065 and that the defendant, therefore, was obligated to fulfill his alimony obligations as defined by the initial award, we conclude that the adjudication of contempt was erroneous.

The defendant was before the court on a motion for civil contempt on the ground that he was failing to comply with the alimony award established by the initial dissolution decree. Civil contempt is "conduct directed against the rights of the opposing party. *Bessette* v. *W. B. Conkey Co.,* 194 U.S. 324, 328, 24 S. Ct. 665, 48 L. Ed. 997 [1904]; *Welch* v. *Barber,* [52 Conn. 147, 157 (1884)]." *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 352, 321 A.2d 462 (1973). "Sanctions for civil contempt may be either a fine or imprisonment; the fine may be remedial or it may be the means of coercing compliance with the court's orders and compensating the complainant for losses sustained. *United States* v. *United Mine Workers,* 330 U.S. 258, 303–4, 67 S. Ct. 677, 91 L. Ed. 884 [1947]." Id., 352–53; *Rogers Mfg. Co.* v. *Rogers,* 38 Conn. 121, 123 (1871); *Lyon* v. *Lyon,* 21 Conn. 184, 196 (1851). "In civil contempt the [punishment] must be conditional and coercive and may not be absolute." *McTigue* v. *New London Education Assn.,* supra, 353. To effectuate the purpose of civil contempt, the contemnor should be able to obtain release from the sanction imposed by the court by compliance with the judicial decree. *United States* v. *United Mine*

*Workers,* supra, 331–32; *McTigue* v. *New London Education Assn.,* supra, 353; *Rogers Mfg. Co.* v. *Rogers,* supra, 123.

At the hearing, through counsel, the defendant claimed he owed no alimony during the pendency of the plaintiff's appeal. Both counsel for the plaintiff and for the defendant attempted to inform the court that it was understood that the defendant was willing to pay if the judge should reject his legal position. Without ruling specifically on the issue of what effect Practice Book § 3065 had on the defendant's alimony obligation, the court found the defendant in contempt, and, as a remedy ordered him to pay to the clerk of the court the arrearage and all future alimony payments pending the resolution of the appeal in accordance with the original alimony award. Payment to the clerk of the court, rather than the plaintiff, was ordered on the ground that should the plaintiff's appeal prove unsuccessful, the defendant would have "paid $6,000 without the necessity to do so and with questionable ability to get it back."

The trial court's adjudication of contempt was premature. The defendant's conduct cannot be reasonably viewed as wilful disobedience of a court order. He had adequately demonstrated a willingness to make the requisite payments once the court concluded he was legally bound to do so. This willingness to purge himself of the contemptuous behavior should have been acknowledged. The finding of contempt is erroneous.[11]

---

[11] Because of our disposition of the defendant's cross appeal we need not address his claim that the trial court erred in ruling on the motion for contempt when a motion making identical claims concerning alimony payments for two months of the ten month period at issue on the present motion was pending before another tribunal.

There is error on the appeal, and the judgment terminating the plaintiff's alimony is set aside; there is error on the cross appeal, the judgment is set aside and the case is remanded with direction to order that the monies held in escrow be delivered to the plaintiff.

In this opinion the other judges concurred.