[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Virginia L. Muzzy, and the defendant were married on December 28, 1956, in Aztec, New Mexico. The plaintiff has resided continuously in the State of Connecticut for at least twelve months next proceeding the date of the filing of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of the marriage, and the plaintiff does not presently have any minor children. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. The court finds that the primary cause of the breakdown of the marriage is the defendant's adulterous involvement with another woman, which has continued up to the date of trial.
The plaintiff was born on October 12, 1939. She was diagnosed with breast cancer in 1991, and had surgery in 1991. She is on medication as a result of her breast cancer and sees her doctor every three months for blood work. She had her gall bladder removed in February of 1993. She has problems with blood pressure being either too high or too low. She also has high cholesterol. Other than for the health conditions described, she is in general good physical health. She obtained her high school equivalency in approximately 1968, after all four children had been born. The plaintiff is employed by the Danbury school system where she has worked for twenty-three years. She is a first grade teacher's aide. She works 182 days per year. Her gross weekly wage is $300.79, and her net wage is $258.90. Her employment includes medical insurance. She also has life insurance through her CT Page 9294 employment in the face amount of $21,000 representing one and one-half times her salary.
The plaintiff had the primary responsibility for raising the children during the marriage.
The plaintiff's financial affidavit shows a liability for attorney's fees in the amount of $1,694.98 as of October 10, 1996. That is the balance due after crediting the plaintiff with $6000 in legal fees that she's paid as of October 10, 1996. The plaintiff would be entitled to social security benefits at a reduced amount at age sixty-two of $395 per month. The social security benefit at her full retirement age of sixty-five and four months would be $545 per month. Her retirement benefit at age seventy would be $765 per month. She would also be entitled to monthly disability benefits of about $480 per month. She is also entitled to survivor benefits when the defendant reaches full retirement age of $495 per month. She has a pension/retirement plan through the City of Danbury. That plan would pay her a monthly benefit at age sixty-five of $1075. It is a defined pension plan.
The defendant was born on August 30, 1933. The defendant has a hearing problem and also suffers from Lupus. The defendant was employed by American National Can Corporation between 1966 and 1995, except for one year. The working conditions at American National Can were noisy, dirty, smoke with pollution in the air and fumes in the air. He was averaging sixty-two to sixty-four hours weekly working there. The working conditions may have affected his hearing. The defendant was ordered to vacate the family home in August of 1995. He resided in Woodbury, Connecticut between August of 1995 and March of 1996. He has resided in Colorado since March of 1996. The defendant suffers from 60 percent deafness in his left ear and 40 percent deafness in his right ear. He also is suffering from depression.
At the present time, the defendant receives social security in the amount of $284 per week and disability income in the amount of $435 per week. The defendant commenced receiving disability income on November 30, 1995. The $435 amounts to 70 percent of the income he was earning while working at American National Can Corporation. In order to be eligible for the disability income, it requires that he also receive social security disability, which he is receiving. He will receive his disability income for a period of five years commencing December CT Page 9295 1, 1995. He has deductions from his disability income for federal taxes of $89 per week, life insurance of $5 per week, and dependency insurance of $1 per week. His financial affidavit of October 9, 1996, shows a deduction of $121 per week for a 401K loan. No such deduction is being made from his disability income. The defendant has the right to withdraw funds from his 401K as a matter of right as of November 30, 1997.
He purchased his 1994 Chevrolet pickup truck on November 5, 1994. He did not tell the plaintiff that he was purchasing that vehicle. The total sale price was $24,995. He received a trade-in allowance for the equity of a vehicle he owned. The equity in that vehicle was $9,362.64. The present value of that pickup is $17,500. Although the defendant's financial affidavit lists the loan balance on the pickup truck as $17,155, the actual loan balance on the pickup truck is approximately $14,000. The loan is being paid off in sixty equal monthly payments of $343 each. He purchased a camp trailer in June or July of 1994, for $8500. The purchase price was financed. He is paying it off at the rate of $165 per month. That debt is not shown on his financial affidavit. His financial affidavit shows the value of the camp trailer as being $2696. That is not accurate. The fair market value of the camper is $6000. The $2696 represents the net equity in the camper. When he purchased the camper, he traded in a boat towards the purchase price. The boat that the defendant traded in towards the camper had been purchased in 1992 for $4500. With improvements and other costs, the total amount spent on the boat was approximately $11,000. The defendant received a $1000 trade-in allowance for the boat towards the camper.
The defendant's financial affidavit shows a liability to CMB MasterCard with a balance of $5500. That is the same MasterCard that is shown on the plaintiff's financial affidavit. The defendant has been making the payments on that MasterCard. He also shows a liability to two separate law firms, one with a balance of $4768 and a second with a balance of $6000. Those are for legal fees he incurred as part of this dissolution action. He has already paid one of those law firms $3500 and the second one, $3000. His financial affidavit shows an equity of $10,000 in a Colorado house. That house has a fair market value of $40,000 and he has a one-fourth interest in that house as a result of an inheritance from his mother. During the calendar year 1995, he received approximately $500 in rental income from that home and will receive approximately $500 rental income from that home for the calendar year 1996, from the estate of his mother. In CT Page 9296 approximately 1993 or 1994, he also received $21,000 as an inheritance from his mother's estate, which he invested in a CMB stock plan. He withdrew $4000 of that amount as a loan to one child, and $3000 as a loan to another child. Both loans have since been repaid. He presently has $55,000 in life insurance. The defendant's financial affidavit shows a personal loan in the amount of $4000. That is a loan from the woman that he is living with.
The defendant has an interest in leases in Western Mineral Rights. He does not receive any income on those leases. The leases, at the present time, do not have any value. The defendant is entitled to a life annuity of $1,075.30 per month at age sixty-five from his pension plan at American National Can. His social security benefit at age sixty-two would be $965 monthly. His social security benefit at age sixty-five would be $1230 monthly. His social security benefit at age seventy would by $1630 monthly.
The weekly expenses that the defendant shows on his financial affidavit represent approximately one-half of the total weekly expenses. The woman that he is living with pays the other one-half.
The parties entered into a stipulation dated October 10, 1996, that provides as follows:
 1. The value of the marital residence located at Berkshire Drive, Danbury, Connecticut is $152,000.
 2. The outstanding balance of the home equity line mortgage against the marital residence is $36,535.15.
3. The value of the defendant's IRA is $55,724.58.
 4. The value of the defendant's 401K, net of a loan against the 401K, as of August 1, 1996, was $174,000.80.
5. The value of the plaintiff's IRA is $1,913.75.
 6. The value of the plaintiff's tax shelter annuity is $9000.
 7. The outstanding real estate taxes against the marital home are $3,250.53.
CT Page 9297
In addition to the dissolution action, there was also before the court a motion to modify alimony pendente lite filed on behalf of the defendant dated December 18, 1995, and coded No. 127; and a second motion to modify alimony filed on behalf of the defendant dated June 5, 1996, coded No. 134 and file stamped June 7, 1996. Both motions arise out of a stipulation entered into between the parties on August 7, 1995, coded No. 118. Paragraph five of that stipulation provided as follows:
 Parties shall return to court to review and modify these support/financial orders when defendant is placed on pension, receive disability insurance in lieu of his regular wage or otherwise has a decrease in his income. Orders then entered will be retroactive to date of such reduction in income. It shall be defendant's responsibility to promptly file with the court and any unreasonable delay may be argued by plaintiff against retroactivity.
When the defendant filed the motion to modify coded No. 127, the plaintiff filed a motion to strike or stay proceedings coded No. 128 and dated January 5, 1996, on the grounds that the defendant did not comply with the requirements of Practice Book § 463 regarding the filing of the required financial affidavit. The defendant did not file a financial affidavit at the time he filed the motion to modify alimony coded No. 127. Although the file does not reflect the filing by the defendant of a financial affidavit at the time he filed his motion to file alimony coded No. 134, counsel for the plaintiff has stipulated that such an affidavit was provided to her on or about June 7, 1996.
Under all the circumstances regarding the above motions, the court is ordering that alimony pendente lite be modified retroactive to June 7, 1996, to the amount of $210 per week. As of October 10, 1996, there was an arrearage of $3780 regarding the pendente lite order of $260 weekly that the defendant was to pay to the plaintiff. As a result of that order being reduced to $210 per week retroactive to June 7, 1996, the arrearage amount as of October 10, 1996, is reduced by $900 to $2880.
The parties have four adult children: Kenneth, age thirty-eight; Patricia, age thirty-six; Michael, age thirty-three; and Judith, age thirty-two. The daughter Judith was diagnosed when she was seventeen years old with multiple sclerosis. In 1971, she was found to have cerebellum damage. CT Page 9298 She presently suffers from ataxia and has problems with balance. During the course of the trial, the court allowed evidence to be presented regarding the physical condition of Judith and the plaintiff's claim that she should receive additional alimony as a result of additional costs and expenses that she incurs in caring for Judith. In entering the financial orders in this case, this court is not considering the fact that Judith is residing with the plaintiff with any resultant additional costs to the plaintiff for two reasons: (1) in Connolly v. Connolly, 191 Conn. 468,478 (1983) the court in footnote 8 stated as follows:
 Since we have held that the trial court's termination of alimony pursuant to General Statutes § 46b-86 (b) was erroneous we need not reach the plaintiff's other claims of error relating to the authority of the trial court to terminate periodic alimony. Her remaining claim, that evidence of voluntarily incurred expenses for support of an emancipated child was improperly excluded by the trial court as irrelevant to her claim for increased alimony, is unmeritorious. In Cariseo v. Cariseo, 190 Conn. 141, 143, 459 A.2d 523 (1983), we held that a substantial change in circumstances supporting modification of an alimony award cannot be predicated on financial obligations incurred from the maintenance of adult children in the family home while they were attending college. We deem this holding as dispositive of the plaintiff's evidentiary claim.
This court concludes that, just as a substantial change in circumstances supporting modification of an alimony award cannot be predicated on financial obligations incurred from the maintenance of adult children in the family home while they are attending college, so too, should financial awards not be based on financial obligations incurred at the time of dissolution from maintaining an adult child in the family home. (2) Although Judith is providing part of the social security income that she receives to the plaintiff for residing with the plaintiff, the fact is that the total amount of social security that Judith receives covers all of the expenses that she has residing with the plaintiff.
Therefore, for both reasons the court is not considering the residence of Judith with the plaintiff in entering financial orders. Further, this court is not considering any of the expenses that the plaintiff has as a result of Judith residing with her. CT Page 9299
The defendant withdrew approximately $9000 on the home equity loan in various amounts. While he claims the $9000 was used for home improvements, the court finds that no credible evidence has been presented by him as to how that money was disposed of. The home equity loan is a joint obligation of the parties.
The court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The defendant is ordered to pay to the plaintiff alimony in the sum of $210 per week.
2. Alimony is to terminate on the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) the remarriage of the plaintiff.
3. The provisions of § 46b-86 (a) and 46b-86 (b) are applicable.
C. BY WAY OF PROPERTY ORDERS
1. The plaintiff is to pay all of the liabilities shown on her financial affidavit including unpaid real estate taxes, but not including the MasterCard liability. She is to hold the defendant harmless from the liabilities she is ordered to pay.
2. The defendant is ordered to pay all of the liabilities shown on his financial affidavit except for the MasterCard. He is to hold the plaintiff harmless from the liabilities he is ordered to pay.
3. The defendant is to transfer to the plaintiff all of his interest in the family home located at 4 Berkshire Drive, Danbury, Connecticut by December 16, 1996. The plaintiff is to be CT Page 9300 responsible for paying the home equity line, and is to hold the defendant harmless therefrom.
4. All of the defendant's interest in the house in Colorado that he obtained through his mother's estate is awarded to the defendant.
5. All of the defendant's interest in the 1994 Chevrolet pickup is awarded to the defendant. The plaintiff is to sign whatever documents are necessary to sign for the title to be in the defendant's name only.
6. All of the defendant's interest in his tools, fishing equipment and in the camp trailer is awarded to the defendant.
7. All of the personal property and furniture in the possession of the defendant is awarded to the defendant.
8. All of the personal property and furniture in the possession of the plaintiff is awarded to the plaintiff
9. The Village Bank checking account and Power Credit Union account shown on the defendant's financial affidavit are awarded to the defendant.
10. The 1988 Cadillac DeVille shown on the plaintiff's financial affidavit is awarded to the plaintiff. The defendant is to sign whatever documents are necessary for the title to the vehicle to be in the plaintiff's name only.
11. All bank accounts shown on the plaintiff's financial affidavit are awarded to the plaintiff.
12. The plaintiff is ordered to transfer to the defendant by QDRO 50 percent of her interest in her City of Danbury pension plan.
13. The IRA shown on the plaintiff's financial affidavit in the amount of $1,913.75 is awarded to the plaintiff.
14. The IRA shown on the defendant's financial affidavit with a balance of $55,724.58 is ordered divided equally between the parties by QDRO.
15. The MasterCard liability is ordered to be divided with CT Page 9301 the defendant paying $4000 of that liability and the plaintiff paying the balance of the liability. The tax shelter shown on the plaintiff's financial affidavit in the amount of $9000 is ordered divided $5000 to the plaintiff and $4000 to the defendant. The defendant's $4000 share of the tax shelter is to be used by the plaintiff to pay the defendant's $4000 share of the MasterCard liability on December 16, 1996.
16. The 401K plan shown on the defendant's financial affidavit with a balance of $174,000 is ordered divided 30 percent to the plaintiff and 70 percent to the defendant by QDRO.
17. All QDROs are to be prepared by counsel for the plaintiff.
18. The court orders that the defendant transfer to the plaintiff one-half of his interest in the leases in Western Mineral Rights.
19. The court orders that the defendant pay to the plaintiff the pendente lite alimony arrearage as of October 10, 1996, of $2880 by December 16, 1996. Interest on that arrearage in the amount of 10 percent per annum shall run commencing December 16, 1996.
20. The defendant's interest in his defined benefit pension plan with American National Can is ordered divided equally between the parties.
21. All transfers of assets are to take place simultaneously on December 16, 1996, at the office of the plaintiff's attorney.
22. The defendant is to name the plaintiff as irrevocable beneficiary on his Metropolitan Life insurance policy that he presently has in effect in the face amount of $55,500 for so long as there is an outstanding alimony order. He is to provide her with proof that such policy is in effect and that there is no loan on such policy annually, commencing December 16, 1996, and annually thereafter.
23. The court orders that the defendant notify the plaintiff by registered mail, return receipt or certified mail, return receipt of any lawsuit that he commences against American National Can Corporation, or any settlement that he may receive against American National Can Corporation arising out of his CT Page 9302 working conditions there and any effect such conditions may have had on his health. Said notices are to be given within thirty (30) days of the commencement of any lawsuit and/or within thirty (30) days of the receipt of any settlement, and is to include the amount of any settlement and/or judgment. The proceeds from any lawsuit and/or settlement are awarded solely to the defendant. To what extent, if any, such judgment, if any, and/or settlement, if any, may result in any modification of the alimony order is a matter that will have to be decided if and when the defendant receives any such money.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
1. The parties are to exchange copies of their federal and state income tax returns within thirty (30) days after such returns have been filed by certified mail, return receipt or registered mail, return receipt for so long as there is an outstanding alimony order.
2. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and send it to counsel for the defendant for signature and filing.
Axelrod, J. CT Page 9303