[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR CONTEMPT DATEDNOVEMBER 1, 1996 AND MOTION FOR MODIFICATION DATED OCTOBER 24,1997 AND PLAINTIFF'S MOTION FOR ORDER AND MOTION FOR CONTEMPTDATED AUGUST 25, 1997
A hearing was held on the above motion dated November 1, 1996, in which the defendant (hereinafter referred to as the husband) claims the plaintiff (hereinafter referred to as the wife) is in contempt for failure to pay him $28,833.80 for his 25 percent interest in the marital home.
By way of background, a judgment of legal separation was entered on November 7, 1986 (Harrigan, J.). The judgment provided in part for an order as to the division of the net proceeds from the sale of the marital home. Paragraph 6 of the judgment provided in relevant part as follows: "Upon sale, after paymentof the mortgage . . . the net proceeds shall be divided 75 percent to the plaintiff [wife] and 25 percent to the defendant [husband]." (Emphasis added.)
The judgment further provided, in paragraph 7, for the husband to maintain three life insurance policies in force naming the wife as primary beneficiary of $100,000 and the two minor children as beneficiaries of a policy in the amount of $150,000.
On February 12, 1988, the parties entered into a stipulation modifying the terms of the original judgment. In paragraphs 2 and 3 of the stipulation, the parties agreed that the wife could remain in the marital home until September 1, 1996, and that she CT Page 13603 would be entitled to a credit for the principal reduction of the mortgages from the date of the original judgment to the time the property was sold and the net proceeds divided.
The stipulation further modified the husband's obligation to maintain life insurance for the two minor children until they completed post high school education (stipulation no. 1). The parties also agreed that each would pay for the four year college education of the children "based on their respective financialabilities." (Emphasis added.) (Stipulation no. 4).
In January, 1994, the parties agreed to refinance the marital home. On January 14, 1994, the husband quitclaimed his interest in the home to the wife, and the wife paid the husband the sum of $15,000 as an advance on his 25 percent interest. By letter dated August 25, 1995, the husband advised the wife she owed him $28,833.80 for his 25 percent interest. The wife replied, in a letter to him dated September 6, 1996, that she was owed $4,664.79, according to her mathematical calculations.
The husband's motion for contempt and orders dated November 1, 1996, was heard on September 4, 1997. His motion for modification dated August 25, 1997 was heard on October 24, 1997. Both parties testified at these two hearings and the court took judicial notice of the dissolution file.
The husband computed his net 25 percent interest as follows:
Stipulated market value of property $220,000.00
Less payment of first mortgage 33,231.33
$186,768.67
Less second mortgage 11,433.46
$175,335.21
Less 75% to wife 131,501.41
Equals 25% to husband $ 43,833.80
Less monies paid on account by wife 15,000.00
Balance due husband $ 28,833.80 CT Page 13604
The wife computed the husband's net 25% interest in the marital home as follows:
Stipulated Market value of property $220,000.00
Share of George W. Billings, III — 25% 55,000.00
Less principal reduction of 1st mortgage 33,231.33
SUB TOTAL $ 21,768.67
Less principal reduction of 2nd mortgage 11,433.46
SUB TOTAL 10,335.21
Less payment on account 15,000.00
OVER PAYMENT $ 4,664.79
The plain language in the judgment requires payment of the mortgages, which totalled $44,664.79, before the 75%-25% split in the net proceeds is computed. This amount must first be deducted from the agreed market value of $220,000, which leaves a net balance of $175,335.21. The wife's 75 percent net share amounts to $131,501.41, and the husband's 25 percent net share amounts to $43,833.80, after payment of the mortgages.
In addition, the plain language of the stipulation allows the wife a credit for reduction of the principal on the two mortgages. From the uncontroverted testimony of the wife, the court finds she reduced the principal by $24,039.21 as a result of the mortgage payments she made from December, 1986 to January, 1994.
The court finds the language in the judgment and stipulation to be clear and definitive, and therefore the husband's 25 percent net interest in the marital home shall be computed as a matter of law as follows:
Stipulated market value of property $220,000.00
Payment of mortgages (2) on the property 44,664.79
Net proceeds after payment of mortgages $175,335.21 CT Page 13605
Husband's 25% of net proceeds $ 43,833.80
Less wife's payment to husband 15,000.00
$ 28,833.80
Less credit to wife for principal reduction of mortgages (2) from December, 1986 to January, 1994 (according to paragraph 2 of the stipulation) 24,039.21
Balance due husband $ 4,794.59
To constitute a contempt, the court must find a party's conduct to be in wilful contempt of a court order. Connolly v.Connolly, 191 Conn. 468, 482-83. Here the wife offered a reasonable explanation in computing the husband's 25 percent interest in the net proceeds from the sale to her. The court finds her to have had a legitimate misunderstanding of the court's order of sale. Even though the court has rejected her computations, she did not wilfully violate the order. Jenks v.Jenks, 39 Conn. App. 139 (1995). For these reasons, the husband's motion for contempt is denied.
In the wife's Motion for Contempt and Order dated August 25, 1997, she claims the husband refused to contribute to the college expenses incurred by their son Derek, who attended U.C.L.A. from 1992 through 1996 when he graduated. The court believes her testimony that she contributed at least $9,000 towards Derek's room, board, tuition and books during the four years he attended college. The husband admitted he was unable to contribute any money toward his son's college expenses. In paragraph 4 of the Stipulation, the parties agreed that each would pay for the college education of their two children "based on theirrespective financial abilities." (Emphasis added.) The parties' daughter Lisa has completed her college education and has been self-supporting for some time, and no claim was made by the wife for her college expenses.
The husband is an attorney who practiced law in the Norwalk area. His earning capacity has been impaired because of a stroke he suffered in 1985, and his earnings from his law practice were limited during the four year period that Derek was in college. From his financial affidavits on file and his testimony as to CT Page 13606 federal income tax returns, the husband's net yearly earnings for those four years did not exceed $3,500. He expects to earn about $7,500 this year. On the other hand, the wife had been earning an annual salary of $77,000 as a school teacher during this four year period. The husband was unable to contribute anything because the stroke he suffered impaired his earnings during those four years which did not exceed $3,500 annually.
For the foregoing reasons, the wife's claim for a credit for her contributions to Derek's college expenses is denied.
The wife further claimed the husband was in contempt for his failure to abide by the court order to provide life insurance for her. In paragraph seven of the judgment, the husband was ordered to keep in force a $100,000 life insurance policy naming the wife as primary beneficiary until she died, remarried or cohabited. The husband admitted he allowed all life insurance policies to lapse in 1996, including this $100,000 policy, after both minor children had completed their college educations in 1996. Then, on October 24, 1997, the husband filed a motion to modify the judgment order claiming he no longer had any financial obligation to maintain the $100,000 life insurance policy for his former wife. He also alleges that his financial circumstances have changed substantially since the judgment of 1986.
The two life policies of $150,000 to benefit the children were in effect throughout the children's college years and lapsed in 1996 because, according to the husband's testimony, he no longer could afford to pay the premiums. The $100,000 policy to benefit the wife also lapsed at that same time for his failure to pay the premiums on her policy.
The court finds the husband had complied with the order in the judgment requiring him from the date of the judgment in 1986 to when the children finished their college education in 1996 to maintain $150,000 worth of life insurance for their benefit.
There was no evidence that any of the conditions necessary to discontinue the $100,000 life insurance policy which benefited the wife; i.e., her death, remarriage or cohabitation, had occurred. The fact that the husband's financial circumstance may have substantially changed to modify the order to maintain this policy would be applicable only if this life insurance policy was security for an alimony award whereby a modification may have been considered pursuant to § 46b-86 of the General Statutes. CT Page 13607
The judgment provided that each party pay One ($1.00) Dollar a year periodic alimony to the other. (See paragraph 1.)
The court does not find any evidence in the judgment that this $100,000 life insurance policy awarded to the wife in paragraph 7 of the judgment was intended to secure this $1.00 per year alimony award. The court finds the $100,000 policy was intended as a property settlement to benefit the wife made pursuant to § 46b-81; therefore, this award is non-modifiable.
The court also finds the husband was able to maintain a total of $250,000 of life insurance from 1986 to 1996. He was able to pay the premiums during the time his son Derek attended college from 1992 to 1996 when his earning capacity was limited to earning $3,500 a year. He stopped paying the premiums on the $100,000 policy unilaterally in 1996 without ever notifying the wife. He estimates his earnings as an attorney in 1997 to be about $7,500. Furthermore, his financial affidavit on file lists a home in Vermont valued at $180,000 which is unencumbered.
For the following reasons, the court finds the husband in wilful contempt for failure to maintain the $100,000 life insurance policy naming the wife as beneficiary. (See paragraph 7 of the judgment.) The court orders him to reinstate the policy within ninety (90) days of the date of filing of this order. The wife may withhold payment of the $4,794.59 she owes the husband, the balance of his 25 percent interest in the marital home, until he delivers proof to her that the $100,000 life insurance policy is reinstated. During the ninety day period, the court urges counsel to bring closure to these issues by agreement.
PETRONI, J.