L. MARY McTIGUE ET AL. *v.* NEW LONDON EDUCATION ASSOCIATION ET AL.

ROSE LUBCHANSKY ET AL. *v.* NEW LONDON EDUCATION ASSOCIATION ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued December 7, 1972—decided February 21, 1973

*Martin A. Gould,* with whom was *Richard D. Gould,* for the appellants (defendants) in each case.

*Edmund J. Eshenfelder,* for the appellees (plaintiffs) in each case.

BOGDANSKI, J. The defendants in these two cases were found guilty of contempt for failing to comply with two injunctions issued by the Superior Court enjoining a teachers' strike. By stipulation of the parties, the appeals have been combined in accordance with § 606 of the Practice Book. From the judgments rendered, the defendants have appealed to this court.

The plaintiffs in both cases are members of the board of education for the city of New London. The defendants are the New London Education Association (herein called "the association"), its officers and members of its negotiating committee, and the certified professional employees of the New London board of education (herein called "the teachers"). Pursuant to § 10-153b of the General Statutes, the association was duly selected by the teachers, members of the association, to represent them in all negotiations concerning salaries and all other conditions of employment.

On November 14, 1969, a temporary injunction was issued in the first case by *Armentano, J.,* a judge of the Superior Court, enjoining the defendants in that case from striking or participating in any concerted refusal to render services to the plaintiffs under penalty of $500 per day. Thereafter, on September 9, 1970, the association adopted a resolution which read: "The New London Education Association reaffirms its basic position: no contract — no work." On that same day a temporary injunction was issued in the second case by *Longo, J.,* a judge of the Superior Court, enjoining the defendants in that case from striking or participating in any concerted refusal to render services to the plaintiffs under penalty of $500 per day. The next day, September 10, 1970, fifty-four teachers

attended school out of a total of 283 teachers. On the same day the defendants were cited to appear at 2 p.m. on September 11, 1970, to show cause why they should not be adjudged in contempt of court. The citations were ordered to be served not later than twelve midnight on the 10th day of September, 1970. During the evening of September 10 and early morning of September 11, 182 teachers selected by the plaintiffs were served with citations.

The hearings on the citations were held on September 11, 12 and 15, 1970. On Saturday, September 12, the court found various officials and members of the association guilty of contempt and fined them in specific amounts. The association was fined $500, its officers $250 each, and it was ordered to pay the plaintiffs' costs of $108. The teachers were fined $100 each and they were ordered to pay the plaintiffs' costs of $1411.20. On Tuesday, September 15, 1970, the court reduced the fines.[1]

In their first four assignments of error, the defendants claim the court erred in finding certain facts without evidence, and in refusing to find material facts set forth in the draft finding which, it is claimed, were admitted or undisputed. Since the defendants failed to brief or argue these assignments, they are treated as abandoned. *State* v.

---

[1] In reconvening, the court made the following statement: "All right. The Court has had a conference with counsel. The Court has been informed that the teachers have returned to work and that, therefore, there is no further defiance of the Court order which was the occasion for these proceedings. In view of that fact after discussing the matter with counsel and as a result of their persuasions on behalf of counsel for the teachers, the Court has decided to reduce the fines which have been imposed on the teachers by one half, the teachers individually; that would reduce each of the fines which has been imposed by one half. In other words, those persons who were fined $100, their fine is reduced to $50; and those persons who were fined $250, their fine is reduced to $125."

*Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; *State* v. *Benson,* 153 Conn. 209, 217, 214 A.2d 103.

The remaining assignments of error challenge the court's conclusions in finding the defendants in contempt, in finding that the defendants were properly served, in making certain rulings, and in overruling the defendants' claims of law.

The primary issue pressed and argued in these appeals is the claim that these contempt proceedings should have been classified as criminal rather than civil, and that the defendants should have been afforded the rights implicit in a criminal trial.

A criminal contempt is "conduct that is directed against the dignity and authority of the Court." *Welch* v. *Barber,* 52 Conn. 147, 157. In contrast, civil contempt is conduct directed against the rights of the opposing party. *Bessette* v. *W. B. Conkey Co.,* 194 U.S. 324, 328, 24 S. Ct. 665, 48 L. Ed. 997; *Welch* v. *Barber,* supra. "[A] contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." *McCrone* v. *United States,* 307 U.S. 61, 64, 59 S. Ct. 685, 83 L. Ed. 1108. In both criminal and civil contempt, punishment is levied on the contemnor. In distinguishing between the two, much weight has been placed on the *character* and *purpose* of the punishment. *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S. Ct. 492, 55 L. Ed. 797. In affirming the *Gompers* case, the Supreme Court in *Shillitani* v. *United States,* 384 U.S. 364, 370, 86 S. Ct. 1531, 16 L. Ed. 2d 622, stated the test to be: "What does the court primarily seek to accomplish by imposing the sentence?" Sanctions

for civil contempt may be either a fine or imprisonment; the fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained. *United States* v. *United Mine Workers,* 330 U.S. 258, 303–4, 67 S. Ct. 677, 91 L. Ed. 884.

In civil contempt the fine must be conditional and coercive and may not be absolute. *Penfield Co.* v. *S.E.C.,* 330 U.S. 585, 595, 67 S. Ct. 918, 91 L. Ed. 1117. In the recent case of *School Committee* v. *Pawtucket Teachers Alliance,* 101 R.I. 243, 221 A.2d 806, the Supreme Court of Rhode Island recognized that coercive fines were characteristic of civil contempt. There, the Teachers Alliance violated an injunction by causing and participating in a work stoppage and was found in contempt. The trial judge commanded the teachers to return to work and imposed a fine of $5000 on the Alliance and $500 on each member of the negotiating committee. These fines *were suspended,* however, as long as the teachers complied with the order of the court. The Rhode Island Supreme Court classified the contempt as civil, stating (p. 255): "He [the trial justice] expressly stated that he found it necessary to impose a penalty which was not punitive in nature, but coercive in that it should assure compliance . . . with the . . . restraining order." In other words, the contempt is civil when the fine is conditional and coercive and when the contemnor can obtain release from the sanction by compliance with the judicial decree. *United States* v. *United Mine Workers,* supra, 331, 332.

In criminal contempt the sanction is punitive in order to vindicate the authority of the court. *Gompers* v. *Bucks Stove & Range Co.,* supra, 441; *State* v. *Howell,* 80 Conn. 668, 671, 69 A. 1057. Con-

sistent with this theory, punitive fines levied in criminal contempt are usually payable to the state. *In re Merchants Stock & Grain Co.*, 223 U.S. 639, 642, 32 S. Ct. 339, 56 L. Ed. 584; *Parker* v. *United States*, 153 F.2d 66 (1st Cir.). In the case of *Board of Junior College District* v. *Cook County College Teachers Union*, 126 Ill. App. 2d 418, 262 N.E.2d 125, also involving a teachers' strike, the Illinois Appellate Court was confronted with the question whether the contempt proceedings should be classified as criminal or civil. The court there found the teachers' union guilty of contempt for failure to comply with the injunction forbidding the strike and fined the defendants and imprisoned one union officer. The question whether there was sufficient proof to convict the defendants required the Appellate Court to determine whether the trial court proceedings were civil or criminal. The court said (pp. 427–28): "The line of demarcation between criminal and civil contempt proceedings is in many instances indistinct and even imperceptible. . . . However, a useful test . . . is the punishment imposed. When punishment is purely punitive: imprisonment for a definite term, fine for a certain sum of money, the contempt is said to be criminal. When punishment is a remedial or coercive measure: commitment of a contumacious party until he complies with the mandate of the court, . . . a fine until there is obedience to the court's order, the contempt is said to be civil. . . . In the case before us no coercive order was issued for the benefit of plaintiff . . . . Punishments the court imposed were fines in sums certain and imprisonment of . . . [one union officer] for a definite period. Thus, by the test of the cases, the proceedings were to determine whether defendants were

guilty of criminal contempt of court. Their guilt *had to be established beyond a reasonable doubt . . . ."* (Emphasis added.)

Applying the above principles to the facts in the cases at bar requires a conclusion that the contempt proceedings herein be classified as criminal. The fines levied were punitive, designed to uphold the dignity and authority of the court: they cannot be classified as remedial or coercive. They were payable to the state of Connecticut and not to the plaintiffs. As already noted, the proceedings began on Friday, September 11, 1970. On Saturday, September 12, the court found the defendants guilty of contempt and fined them in specific amounts. On Tuesday, September 15, the court opened the session with a statement that clearly indicated that the fines were punitive.[2] Since the work stoppages of September 10 and 11 had ceased, the fines were imposed not to coerce compliance but to punish for past violations, and the fines were absolute rather than conditional.

The following rulings were made at the hearing on September 15, 1970. A motion was made for a continuance in order to give the defendants a reasonable opportunity to prepare a defense. The court denied the motion and an exception was duly taken. The plaintiffs called Charles William Frink, president of the defendant association, to the witness stand. The defendants objected, contending that the matter was a criminal proceeding, that Frink should not be compelled to testify, and that the plaintiffs should not be allowed to prove their case through Frink. The objection was overruled and an exception noted.

Since we hold that the contempt proceedings at bar were criminal rather than civil, it necessarily

---

[2] See footnote 1, supra.

follows that the defendants were entitled to the safeguards of a criminal trial and to have their guilt established by proof beyond a reasonable doubt. *Board of Junior College District* v. *Cook County College Teachers Union,* supra. This court has stated as far back as the year 1884 that a proceeding for the punishment of criminal contempt should conform as nearly as possible to proceedings in criminal cases. *Welch* v. *Barber,* 52 Conn. 147, 157; and in 1911 the United States Supreme Court declared: "[I]t is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S. 418, 444, 31 S. Ct. 492, 55 L. Ed. 797. Since the defendants were not afforded a criminal trial the above rulings and the judgments rendered thereon were clearly erroneous.

Since a new trial will be necessary, we discuss one other assignment of error relative to an issue which may arise on that trial and that is whether § 10-153e of the General Statutes violates the first and fourteenth amendments to the United States Constitution. Section 10-153e provides as follows: "No certified professional employee shall, in an effort to effect a settlement of any disagreement with his employing board of education, engage in any strike or concerted refusal to render services. This provision may be enforced in the superior court for any county in which said board of education is located by an ex parte temporary injunction issued by said court or a judge thereof; provided, if such injunction is issued, such employee may file a motion to dissolve such injunction and a hearing upon such motion shall be held by the superior court not later

than three days after service of such motion upon said board of education pursuant to an order of the court or a judge thereof." It is claimed that § 10-153e, in placing an absolute prohibition on all strikes by certified professional employees of the plaintiffs, violates the due process and equal protection clauses of the fourteenth amendment. The defendants make much of the fact that the right to bargain collectively is constitutionally guaranteed. This, however, is not an issue here. Bargaining collectively by teachers and other municipal employees is protected by our statutes. See General Statutes §§ 10-153d, 7-469.

It is clear that in prohibiting strikes by municipal employees the legislature expressed its belief that such action was necessary to safeguard a compelling governmental interest. A governmental body can, under proper circumstances, obtain injunctive relief forbidding a strike by public employees. *Norwalk Teachers' Assn.* v. *Board of Education,* 138 Conn. 269, 83 A.2d 482; *Los Angeles* v. *Los Angeles Building & Construction Trades Council,* 94 Cal. App. 2d 36, 210 P.2d 305; *School District* v. *Holland Education Assn.,* 380 Mich. 314, 157 N.W.2d 206; *New York City Transit Authority* v. *Loos,* 161 N.Y.S.2d 564; *International Brotherhood of Electrical Workers* v. *Grand River Dam Authority,* 292 P.2d 1018 (Okla.).

The *Norwalk Teachers'* case was an action for a declaratory judgment. This court held that a town board of education is an agency of the state in charge of education in the town, and in performing its duties, is acting in a governmental, not a proprietary, capacity. Teachers employed by it are not in a class with employees employed by the municipality in a proprietary capacity. We declared that

the Norwalk Teachers' Association did not have the right to engage in a concerted action such as a strike, work stoppage or collective refusal to enter upon their duties. *Norwalk Teachers' Assn.* v. *Board of Education,* supra, 276.

In a 1968 case, the Court of Appeals of New York rejected the contention that a state statute which prohibited strikes by public employees was unconstitutional because it deprived the defendants of due process of law. *New York* v. *De Lury,* 23 N.Y.2d 175, 243 N.E.2d 128, appeal dismissed, 394 U.S. 455, 89 S. Ct. 1223, 22 L. Ed. 2d 414, rehearing denied, 396 U.S. 872, 90 S. Ct. 37, 24 L. Ed. 2d 126. It was there held that the fourteenth amendment to the United States Constitution does not grant any individual the absolute right to strike. On the contrary, the court said that right was subject to the qualification that if a strike was for an illegal objective, it would be enjoinable at the instance of an aggrieved party. It is clearly within the power of the state, in governing its internal affairs, to prohibit any strike if the prohibition is reasonably calculated to achieve a valid state policy in an area that is open to state regulation. Id., 181–82; *Anderson Federation of Teachers* v. *School City of Anderson,* 252 Ind. 558, 251 N.E.2d 15, cert. denied, 399 U.S. 928, 90 S. Ct. 2243, 26 L. Ed. 2d 794. Similarly, in *School District* v. *Holland Education Assn.,* 380 Mich. 314, 321–22, 157 N.W.2d 206, the Michigan Supreme Court upheld the constitutionality of a statute which provided: "No person holding a position . . . in the government of the State of Michigan or in the public school service . . . or in any other branch of the public service . . . *shall strike.*" (Emphasis added.) Mich. C.L. 1948, § 423.201 et seq., as amended by Mich. P.A. 1965, No. 379.

In the appeal the teachers contended that the statute violated guarantees in both federal and state constitutions pertaining to freedom of speech, assembly, freedom from involuntary servitude, and denial of equal protection of law. The court there said: "We cannot agree. We are indeed mindful of the argument so vigorously advanced that public employees generally, and particularly teachers, are denied rights enjoyed by those in private employment, to their prejudice. . . . To hold our act flatly unconstitutional we would have to disregard our own precedent and the overwhelming weight of nationwide authority. We affirm the principle that within limitations not here relevant the sovereignty may deny to its employees the right to strike." *School District* v. *Holland Education Assn.*, supra. The defendants' claim that § 10-153e, in placing a prohibition on strikes by certified professional employees of the plaintiff board of education, violates the due process and equal protection clauses of the fourteenth amendment is without merit.

Since these issues are dispositive of the appeals, there is no need to consider the remaining assignments of error.

There is error in both cases, the judgments of contempt are set aside and a new trial is ordered in each case on the contempt issue.

In this opinion the other judges concurred.