ROGER S. DUNHAM *v.* CARL M. DUNHAM, JR.
(13997)
CARL M. DUNHAM, JR. *v.* ROGER S. DUNHAM
(14108)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BORDEN, Js.

Argued October 31, 1990—decision released January 1, 1991

*Michael E. Grossman,* with whom, on the brief, was *Timothy Brignole,* for the appellant in each case (Roger S. Dunham).

*Norman J. Voog,* with whom was *Linda Selby Tableman,* for the appellee in each case (Carl M. Dunham, Jr.).

PETERS, C. J. These two appeals arise out of ongoing litigation between two brothers, Roger S. Dunham (Roger) and Carl M. Dunham, Jr. (Carl), concerning their conflicting claims to real property originally acquired by their father. In *Dunham* v. *Dunham,* 204 Conn. 303, 312–15, 528 A.2d 1123 (1987) (*Dunham I*), we concluded that Roger, the plaintiff in that lawsuit, had failed to establish any contractual right to certain property known as Candlelight Farms Airport, which his father had acquired and had willed to his mother, and his mother had subsequently deeded to Carl by inter vivos transfer.

After the publication of our decision in *Dunham I,* the trial court, at Carl's behest, issued a permanent injunction to preclude Roger from any further trespasses on the airport property. The first appeal, Docket No. 13997, challenges the validity of the trial court's order imposing sanctions on Roger because of his willful contempt of this permanent injunction.

Carl also filed an independent supplemental action seeking to recover, inter alia, damages attributable to Roger's wrongful use of the airport property. In response to that action, Roger filed a counterclaim alleging that Carl had acquired the Candlelight Farms Airport property in breach of his fiduciary duty to Roger. To secure his counterclaim, Roger filed a notice of lis pendens on the airport property. The second appeal, Docket No. 14108, challenges the validity of the trial court's order discharging Roger's notice of lis pendens as invalid.

Although both appeals were originally filed in the Appellate Court, we transferred them to this court in accordance with Practice Book § 4024. We affirm the judgment in the first appeal and dismiss the second appeal for lack of a final judgment.

I

Docket No. 13997

On April 29, 1986, pending this court's resolution of *Dunham I,* the trial court, *Kline, J.,* had issued an order temporarily enjoining Roger from entering upon Candlelight Farms Airport and temporarily enjoining Carl from leasing or permitting anyone else to use the airport property. Subsequent to the publication of *Dunham I* affirming the trial court's ruling that Roger had no contractual claim to the airport property, the trial court, *Pickett, J.,* on December 14, 1987, ordered the temporary injunction against Carl to be dissolved and

the temporary injunction against Roger to be made permanent, "subject to the condition that he shall remove any and all personal property, but make no other use of the realty, on or before December 30, 1987, upon penalty of $500.00 per day."[1]

Carl filed a motion for contempt on August 18, 1989, alleging that, on numerous dates subsequent to the issuance of the permanent injunction on December 14, 1987, Roger had trespassed upon the airport in numerous ways, including dumping of garbage, conducting an airport business, and making recreational use of a pond on the property. The contempt motion asked the court to fine Roger and to award Carl attorney's fees and compensatory damages. After a two day hearing concluding on October 30, 1989, the trial court, *Pickett, J.,* found Roger in contempt and committed him to the custody of the commissioner of correction for thirty days, and ordered him to produce subpoenaed material for Carl's counsel by December 6, 1989. At a subsequent hearing, Roger stipulated that, in violation of the December 14, 1987 injunction, he had entered the airport property for 165 days. On the basis of this stipulation, the court, on February 26, 1990, ordered Roger to pay Carl a "$49,500.00 fine, plus $10,000 attorney's fee and $485.70 costs." Apart from an appeal for clemency, Roger voiced no contemporaneous objection to the substance of this order.[2]

---

[1] At the same time that he moved for the issuance of this permanent injunction order, Carl also filed a motion for contempt against Roger, alleging that Roger had violated the temporary injunction by continuing to use the airport. The contempt motion was continued for further proceedings because of the absence of the necessary evidentiary foundation. The record does not indicate that Carl pursued this contempt motion thereafter.

[2] On March 13, 1990, subsequent to the filing of his notice of appeal from the trial court's contempt orders, Roger filed a motion, pursuant to Practice Book §§ 4051 and 4059, asking the trial court "to articulate and set forth in writing the factual findings and legal conclusions of the Court, and the factual findings and legal conclusions that pertain to the Court's order that the Plaintiff is to pay to the Defendant Forty-nine Thousand Five Hun-

In his appeal to this court, Roger now claims that the trial court's judgment must be set aside because the court lacked the authority: (1) to order him to pay a fine of $49,500 to Carl without making an express evidentiary finding that Carl suffered damages in that amount; or (2) to order his incarceration and the production of allegedly incriminatory documents. In response, Carl maintains that these issues are not properly before us because they were not distinctly raised at trial.

The record bears out Carl's contention that Roger did not contest the validity of either of the civil contempt orders[3] at the time that they were issued by the trial court on any of the grounds on which he now seeks review. After the judgment, the only motion filed by Roger was a motion to stay the contempt order pending resolution of the present appeal.[4] He never otherwise challenged any of the trial court's rulings, by filing

---

dred ($49,500.00) Dollars fine." The trial court denied the motion for articulation on April 25, 1990. The record does not indicate that Roger pursued any further legal remedies to obtain judicial review of this denial.

[3] The contempt orders in this case were civil contempt orders because they were issued to vindicate the private rights of Carl rather than the dignity and authority of the court. *Mays* v. *Mays,* 193 Conn. 261, 265–66, 476 A.2d 562 (1984); *DeMartino* v. *Monroe Little League, Inc.,* 192 Conn. 271, 278, 471 A.2d 638 (1984); *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 352–53, 321 A.2d 462 (1973). Sanctions for civil contempt may be either a fine or imprisonment; a fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained. *DeMartino* v. *Monroe Little League, Inc.,* supra; *McTigue* v. *New London Education Assn.,* supra, 278–79; see also *United States* v. *United Mine Workers of America,* 330 U.S. 258, 303–304, 67 S. Ct. 677, 91 L. Ed. 884 (1947); *G. & C. Merriam Co.* v. *Webster Dictionary Co.,* 639 F.2d 29, 41 (1st Cir. 1980). "[T]he contempt is civil when the fine is conditional and coercive and when the contemnor can obtain release from the sanction by compliance with the judicial decree." *McTigue* v. *New London Education Assn.,* supra, 353. The fine imposed for a civil contempt may be payable to the complainant as compensation for his loss. *DeMartino* v. *Monroe Little League, Inc.,* supra, 279.

[4] The trial court granted this motion.

a motion either in arrest of judgment or to set the order aside. See Practice Book §§ 320, 326. In these circumstances, as in *Dunham I,* supra, 310–12, since the trial court was never afforded the opportunity to correct any possible errors in its rulings, we review Roger's claims only insofar as they may constitute plain error. See Practice Book § 4185.

In determining the appropriate scope of plain error review after an uncontested finding of civil contempt, we must take into account the limited scope of review that attends even a plenary appeal from a judgment of civil contempt. In any appeal from a civil contempt order, "our review is technically limited to 'questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt.' . . . This limitation originates because by its very nature the court's contempt power, 'to be effectual, must be immediate and peremptory, and not subject to suspension at the mere will of the offender.' . . . On the other hand, the trial court's need for immediate and effective contempt power must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because: the injunction on which it was based was vague and indefinite . . . the findings on which it was based were ambiguous and irreconcilable . . . the contemnor's constitutional rights were not properly safeguarded . . . the penalties imposed were criminal rather than civil in nature . . . and the contemnor, through no fault of his own, was unable to obey the court's order." *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 731–32, 444 A.2d 196 (1982). Although *Papa* recognizes that plenary review of civil

contempt orders extends to some issues that are not truly jurisdictional, its emphasis on fundamental rights underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment. See *Friedlander* v. *Friedlander,* 191 Conn. 81, 84, 463 A.2d 587 (1983).

The rights that Roger claims have been infringed by the fine stipulated in the contempt order cannot fairly be characterized as fundamental rights. It bears emphasis that Roger does not challenge: the validity of the permanent injunction; his willful contempt of the injunction; his ability to obey the injunction; or the authority of the court to order the payment of a fine to Carl in some appropriate amount. He challenges only the amount of the monetary sanction imposed, which, he asserts, was wrongful because: as a matter of law, the court fixed the amount of the fine without considering the damages sustained by Carl; and as a matter of fact, the court lacked an evidentiary foundation to link the amount of the fine with the damages sustained by Carl. On the present record, we are unpersuaded that the trial court's order so impaired a fundamental right as to constitute plain error.

With respect to Roger's claim of law, the record of the trial court's appraisal of Roger's conduct at the end of the evidentiary hearing held on October 30, 1989, undermines the proposition that the court misconceived the role of a coercive fine. On that occasion, the court stated: "There is no question in the Court's mind but that Mr. [Roger] Dunham has been guilty of willful violation of the Court's injunction and done so open and notoriously without claim of right. Accordingly, you are placed in the custody of the Commissioner of Corrections . . . for a period of thirty days. The Court will continue the matter until December 11, 1989, for further hearing on the monetary penalties which must be

more documented based upon the evidence that I have heard, fifty thousand dollars or more based on five hundred dollars a day. . . . [T]he evidence is not such that the Court can determine as to whether or not some of these lessons were not given more than once on the same day which would reduce the amount. Therefore, I cannot total them all up at this point. But, [Roger] is ordered to produce those documents on or before December 6, 1989, to [Carl's] counsel for his use and examination for further hearing, at which time the Court will determine the monetary penalties to be imposed.'' The "lessons" to which the court referred were flying lessons that Roger had given from the airport, in violation of the injunction. On a theory of unjust enrichment, the income thus generated to Roger would be a cognizable element of Carl's damages. Having focused on the need for an evidentiary foundation for an assessment of monetary penalties in October, the court was not likely to have imposed such penalties on an entirely different basis in February. Thus, it was not plain error for the court to fix the amount of the fine as it did without further articulating its recognition of the need for an evidentiary basis therefor.

The only remaining issue, therefore, with regard to the monetary fine imposed on Roger, is whether the trial court plainly erred in assessing the amount of the fine at a level that was so lacking in evidentiary foundation as to impair a fundamental right. As the stipulation that Roger violated the permanent injunction on 165 days demonstrates, this is not a case in which the party injured by the contemnor has failed to prove that he suffered any damages whatsoever. Carl's efforts to quantify the damages attributable to Roger's willful and continued misconduct were, as the trial court recognized, impaired by the inadequacy of Roger's records and the lacunae in Roger's recollection of the extent of his trespasses. It is not unreasonable to assume, how-

ever, that if Roger had challenged the calculation of his fine at the time of its assessment, Carl would have persisted in further questioning to establish his damages more precisely. Given the extent of Roger's contumacious conduct, and the fact that the injunction itself warned him of the substantial economic risk that such conduct entailed, the trial court's fixing of a fine approximating damages was not plain error. "That damages may be difficult to assess is, in itself, insufficient reason for refusing them once the right to damages has been established." *Griffin* v. *Nationwide Moving & Storage Co.,* 187 Conn. 405, 420, 446 A.2d 799 (1982); *Ball* v. *Pardy Construction Co.,* 108 Conn. 549, 551, 143 A. 855 (1928); *Leabo* v. *Leninski,* 2 Conn. App. 715, 727, 484 A.2d 239 (1984), appeal after remand, 9 Conn. App. 299, 518 A.2d 667 (1986), cert. denied, 202 Conn. 806, 520 A.2d 1286 (1987); see also *Tufano* v. *Tufano,* 18 Conn. App. 119, 123–25, 556 A.2d 1036 (1989) (contempt order awarded $500 payments to grandparents as compensation for missed opportunities for visitation).

There is even less merit in Roger's belated effort to invoke a constitutional justification for his refusal to respond to a subpoena that was valid on its face.[5] Just as the privilege against self-incrimination does not provide an automatic defense to a grand jury summons; see *State* v. *Morrill,* 197 Conn. 507, 518, 498 A.2d 76 (1985); so it does not provide an automatic defense to a subpoena. In civil actions, the privilege against self-incrimination is not self-executing but must be expressly invoked at the time that allegedly incriminatory evidence is sought to be compelled or introduced.

---

[5] In a motion for reconsideration of his sentencing for violation of the court's order to respond to the subpoena, Roger expressly conceded "the error of his ways and the seriousness of [the] injunction which he has violated." In response to these representations, the trial court granted his motion to reduce his thirty day sentence to twenty days.

*Garner* v. *United States,* 424 U.S. 648, 655, 96 S. Ct. 1178, 47 L. Ed. 2d 370 (1976); *Communist Party* v. *Subversive Activities Control Board,* 367 U.S. 1, 107, 81 S. Ct. 1357, 6 L. Ed. 2d 625 (1961); C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed. 1988) § 12.2.4, p. 424; C. McCormick, Evidence (3d Ed. 1984) § 136.

In summary, in appeal Docket No. 13997, Roger has failed to demonstrate plain error in any aspect of the sanctions imposed by the trial court for his repeated and willful violations of the permanent injunction forbidding his trespassing on the airport property owned by Carl. Even in criminal appeals invoking the common law doctrine of plain error codified in Practice Book § 4185, "[b]elated appellate scrutiny is warranted only for egregious errors that undermine the fairness of a trial and cast doubt on the integrity of judicial proceedings." *State* v. *Hull,* 210 Conn. 481, 485, 556 A.2d 154 (1989). In the circumstances of this case, we are unpersuaded that the sanctions imposed on Roger manifest the deprivation of such a fundamental right or of a fair trial.

The judgment in Docket No. 13997 is affirmed.

II

Docket No. 14108

The substantive issue in the second appeal is the interpretation of General Statutes § 52-325 with respect to the time constraints it imposes on a defendant's recordation of a notice of lis pendens. In response to Carl's supplemental action for damages, for an accounting, and for equitable relief, seeking further remedies to secure his rights to the Candlelight Farms Airport and other property, Roger, as defendant, timely filed an answer, a special defense, and a counterclaim alleging an equitable interest in the real property. Almost nine

months later, Roger filed and recorded a notice of lis pendens to secure his counterclaim. As § 52-325 (a) provides, the purpose of such a notice is to bind any subsequent purchaser or encumbrancer "as if he were made a party to the action" described in the lis pendens. "[A] notice of lis pendens ensures that the [litigant's] claim cannot be defeated by a prejudgment transfer of the property. . . . [T]he lis pendens procedure provides security for payment of the claim pending final resolution of the case." *Williams* v. *Bartlett,* 189 Conn. 471, 479–80, 457 A.2d 290, appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983).

The trial court granted Carl's motion to discharge Roger's lis pendens. The motion alleged that the lis pendens had never become effective because, in violation of § 52-325 (a), the notice had not been filed "at the time the answer is filed." Granting the motion to discharge on March 22, 1990, the court ordered: "The notice of Lis Pendens filed by Roger Dunham, the Defendant herein, through his attorney, Timothy Brignole, on or about March 12, 1990, is invalid and discharged, and the same does not constitute constructive notice." At trial, Roger contested Carl's construction of the time constraints contained in § 52-325 (a), and on appeal he renews his claim that the trial court should not have discharged his lis pendens.

Before proceeding to the merits of the trial court's ruling, we must decide whether the discharge of a lis pendens on the ground of an alleged procedural default is a final judgment. "[T]he right to appeal is purely statutory and is accorded only if the conditions fixed by statute are met. *Milford* v. *Local 1566,* 200 Conn. 91, 95, 510 A.2d 177 (1986); *State* v. *Curcio,* 191 Conn. 27, 30, 463 A.2d 566 (1983). General Statutes § 52-263 provides that in proceedings before the Superior Court, 'if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising

in the trial . . . he may appeal to the court having jurisdiction from the final judgment. . . .' See also Practice Book § 3000." *Durso* v. *Misiorek,* 200 Conn. 656, 660, 512 A.2d 917 (1986). For a lis pendens, whose validity now depends entirely on statutory fiat, what constitutes a final judgment depends upon the text of the governing statutes. General Statutes §§ 52-325 through 52-326.

The governing statutes contemplate that a property owner burdened by a notice of lis pendens may rightfully challenge its validity on two independent grounds: (1) the absence of probable cause to sustain the lis pendens claim; or (2) noncompliance with the procedural requirements of an effective lis pendens notice. The legislature provided a separate set of statutory provisions to deal differently with the issues raised by these disparate challenges to a lis pendens.

When a property owner challenges the existence of probable cause for the validity of the lis pendens claim, resolution of this application for discharge is governed by General Statutes §§ 52-325a, 52-325b and 52-325c.[6] Section 52-325a prescribes the required content of an application for discharge grounded on an alleged lack

[6] "[General Statutes] Sec. 52-325a. APPLICATION FOR DISCHARGE. FORMS. HEARING. (a) Whenever a notice of lis pendens is recorded against any real property pursuant to subsection (a) of section 52-325, the property owner, if the action has not then been returned to court, may make application, together with a proposed order and summons, to the superior court for the judicial district to which the action is made returnable, or to any judge thereof, that a hearing or hearings be held to determine whether such notice of lis pendens should be discharged. The court or judge shall thereupon order reasonable notice of such application to be given to the plaintiff and shall set a date or dates for the hearing or hearings to be held thereon. If such plaintiff is not a resident of this state such notice shall be given by personal service, registered or certified mail, publication or such other method as the court or judge shall direct. At least seven days notice shall be given to the plaintiff prior to the date of such hearing.

"(b) The application, order and summons shall be substantially in the following form:

of probable cause. Section 52-325b describes the requisite hearing to be held on a § 52-325a application, if probable cause is contested, and assigns the burden of proof on this issue to the lis pendens claimant. Subsec-

## APPLICATION FOR DISCHARGE OF
## NOTICE OF LIS PENDENS

To the . . . . Court of . . . .

The undersigned represent(s):

1. That . . . . is the owner of the real property described in schedule A attached hereto;

2. That on or about . . . . (date) . . . . (name of plaintiff) of . . . . (address of plaintiff) recorded a notice of lis pendens affecting such real property and gave notice thereof;

3. That there is not probable cause to sustain the validity of the plaintiff's claim;

4. That the applicant seeks an order for discharge of such recorded notice of lis pendens.

. . . .
(Name of Applicant)
By: . . . .
His Attorney

## ORDER

The above application having been presented to the court, it is hereby ordered that a hearing be held thereon at . . . . (time) on . . . . (date) and that the applicant give notice to the following persons: . . . . (Names and addresses of persons entitled to notice) of the pendency of said application and of the time when it will be heard by causing a true and attested copy of the application and of this order to be served upon such persons by some proper officer or indifferent person on or before . . . . and that due return of such notice be made to this court.

Dated at . . . . this . . . . day of . . . ., 19. . .

. . . .
(Clerk of the Court)

## SUMMONS

To the sheriff of the county of . . . ., his deputy or either constable of the town of . . . ., in said county,

Greeting:

By authority of the state of Connecticut, you are hereby commanded to serve a true and attested copy of the above application and order upon . . . ., of . . . . by leaving the same in his hands or at his usual place of abode (or such other notice as ordered by the court) on or before . . . .

Hereof fail not but due serve and return make.

Dated at . . . . this . . . . day of . . . . 19. . .

. . . .
(Commissioner of the Superior Court)

tion (b) of § 52-325b empowers the trial court, having resolved the probable cause issue, either to deny the application for discharge or to order the notice of lis pendens discharged. To complete the scenario, § 52-325c (a)

(1) The clerk upon receipt of all such documents in duplicate, if he finds them to be in proper form, shall fix a date for a hearing on the application and sign the order of hearing and notice. A copy of the original document shall be placed in the court file.

(2) The clerk shall deliver to the applicant's attorney the original of such documents for service. Service having been made, such original documents shall be returned to such court with the endorsement by the officer of his actions.

"(c) If the action for which notice of lis pendens was recorded, is pending before any court, the property owner may at any time, unless the application under subsection (a) of this section has previously been ruled upon, move that such notice of lis pendens be discharged of record."

"[General Statutes] Sec. 52-325b. BURDEN OF PROOF AT HEARING. AUTHORITY OF COURT. (a) Upon the hearing held on the application or motion set forth in section 52-325a, the plaintiff shall first be required to establish that there is probable cause to sustain the validity of his claim. Any property owner entitled to notice under subsection (c) of section 52-325 may appear and be heard on the issue.

"(b) Upon consideration of the facts before it, the court or judge may: (1) Deny the application or motion if probable cause to sustain the validity of the claim is established, or (2) order such notice of lis pendens discharged of record if probable cause to sustain the validity of the plaintiff's claim is not established."

"[General Statutes] Sec. 52-325c. APPEAL. (a) Any order entered as provided in subsection (b) of section 52-325b shall be deemed a final judgment for the purpose of appeal.

"(b) No appeal shall be taken from such order except within seven days thereof. The effect of such order shall be automatically stayed for such seven-day period. If an appeal is taken within such seven-day period, the party taking such appeal may, within such period, file an application with the clerk of the court in which such order was issued, requesting a stay of the effect of such order pending such appeal, which application shall set forth the reasons for such request. A copy of such application shall be sent to the adverse party by the applicant. Upon the filing of such application, the effect of such order shall be further stayed until a decision is rendered thereon. A hearing on such application shall be held promptly. Such order shall be stayed if the party taking such appeal posts a bond, as provided in subsection (c) of this section.

"(c) Upon the hearing on such application, the court shall: (1) Upon motion of the party taking the appeal set an amount of bond with surety for the

then provides that "[a]ny order entered as provided in subsection (b) of section 52-325b shall be deemed a final judgment for the purpose of appeal." Other subsections of § 52-325c: require an appeal to be taken within seven days; provide for a hearing upon an application for a stay, supported by a surety bond, once a timely appeal has been taken; and authorize recordation of an order discharging a notice of lis pendens.

When, however, a property owner files a motion for discharge alleging an invalid notice of lis pendens, resolution of this motion is governed in its entirety by General Statutes § 52-325d.[7] Section 52-325d provides relief

stay of such order as provided in subsection (b) of this section, which amount shall be as the court deems sufficient to indemnify the adverse party for any damages which may result from the stay. If the party taking the appeal gives such bond the order shall be stayed; or (2) grant the stay; or (3) deny the stay; or (4) condition the granting of the stay upon the giving of such a bond.

"(d) Any order of discharge or any order of any stay shall take effect upon recording of a certified copy thereof in the office of the town clerk in which such notice of lis pendens was recorded. The clerk of the court in which any such order is issued shall not deliver any certified copies thereof until the time for taking an appeal has elapsed or, if an appeal is taken and an application for a stay of such order is filed, until such time as a decision granting or denying such stay has been rendered.

"(e) When a certified copy of such order of discharge of notice of lis pendens has been recorded, such discharged notice of lis pendens shall not be deemed to constitute constructive notice of the claim of the party recording such notice to any third party who acquires his interest in the particular property either before or after the recording of such discharge."

[7] "[General Statutes] Sec. 52-325d. MOTION FOR DISCHARGE OF INVALID NOTICE OF LIS PENDENS. In any action in which (1) a notice of lis pendens was recorded which is not intended to affect real property, or (2) the recorded notice does not contain the information required by subsection (a) of section 52-325 or section 46b-80, as the case may be, or (3) service of process or service of the certified copy of the notice of lis pendens was not made in accordance with statutory requirements, or (4) when, for any other reason, the recorded notice of lis pendens never became effective or has become of no effect, any interested party may file a motion requesting the court to discharge the recorded notice of lis pendens. If the court finds that such notice never became effective or has become of no effect, it shall issue its order declaring that such notice of lis pendens is invalid and discharged, and that the same does not constitute constructive notice. A cer-

if the recorded notice of lis pendens: "(1) . . . is not intended to affect real property, or (2) . . . does not contain the information required by subsection (a) of section 52-325 or section 46b-80 . . . or (3) . . . was not [served] in accordance with statutory requirements, or (4) . . . for any other reason . . . never became effective or has become of no effect . . . ." Upon a judicial finding that the notice of lis pendens "never became effective or has become of no effect," the court is empowered to issue its order "declaring that such notice of lis pendens is invalid and discharged." General Statutes § 52-325d. A certified copy of the order of discharge "may be recorded in the land records . . . ." General Statutes § 52-325d.

Although the provisions of § 52-325d parallel those of §§ 52-325a, 52-325b and 52-325c in many salient respects, the statutory patterns differ conspicuously with respect to the immediate appealability of orders discharging or validating a notice of lis pendens. Section 52-325d is entirely silent on this matter, while § 52-325c expressly contemplates an immediate appeal for contested findings of probable cause, albeit an appeal permitted only within narrowly defined time constraints. The inference to be drawn is that § 52-325d orders, unlike § 52-325b orders, are not final judgments. The legislature's contrasting treatment of what constitutes a final judgment is particularly telling because all four sections were enacted contemporaneously as part of Public Acts 1981, No. 81-8.

The present proceedings for discharge of Roger's notice of lis pendens were unquestionably brought pursuant to § 52-325d. Carl alleged that the notice was ineffective because it was filed in violation of § 52-325 (a). Although the trial court's order of dis-

---

tified copy of such order may be recorded in the land records of the town in which the notice of lis pendens was recorded."

charge found only that Roger's notice was "invalid and discharged," probable cause was never an issue before the trial court.

In these circumstances, we conclude that Roger's appeal from an order discharging his notice of lis pendens under § 52-325d must be dismissed because this order, interlocutory on its face pending the resolution of the underlying litigation, is not a final judgment. To characterize the trial court's § 52-325d order as other than interlocutory would render the legislative enactment of § 52-325c superfluous, and indeed would arguably permit a common law appeal outside of the seven-day period limitation prescribed therein. As in *City National Bank* v. *Davis,* 181 Conn. 42, 45–46, 434 A.2d 310 (1980), involving the immediate appealability of disputes about statutory prejudgment remedies, we are bound to give effect to legislatively prescribed distinctions in the rights and remedies that accompany various challenges to nonconsensual liens upon real property. *Rawling* v. *New Haven,* 206 Conn. 100, 112, 537 A.2d 439 (1988); *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987).

The appeal in Docket No. 14108 is dismissed.

In this opinion CALLAHAN and BORDEN, Js., concurred.

COVELLO, J., with whom SHEA, J., joins, dissenting. On the basis of this record, I submit that it was plain error for the trial court to order the $49,500 fine paid by the contemnor to his brother. As the majority impliedly concedes,[1] there was simply no evidence of

---

[1] The majority states: "Carl's efforts to quantify the damages attributable to Roger's willful and continued misconduct were, as the trial court recognized, impaired by the inadequacy of Roger's records and the lacunae in Roger's recollection of the extent of his trespasses. It is not unreasonable to assume, however, that if Roger had challenged the calculation of his fine at the time of its assessment, Carl would have persisted in fur-

actual damage that could serve as the basis for such an award to be paid to the moving party.

"A criminal contempt is 'conduct that is directed against the dignity and authority of the Court.' . . . In contrast, civil contempt is conduct directed against the rights of the opposing party . . . . Sanctions for civil contempt may be either a fine or imprisonment; the fine may be [1] remedial or [2] it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained. . . ." *McTigue* v. *New London Education Assn.*, 164 Conn. 348, 352–53, 321 A.2d 462 (1973). "In civil contempt the fine must be conditional and coercive, and may not be absolute." *Board of Education* v. *Shelton Education Assn.*, 173 Conn. 81, 85, 376 A.2d 1080 (1977).

The injunctive order of December 14, 1987, directed the contemnor to "make no other use of the realty." To coerce compliance, the trial court further ruled, "upon penalty of $500.00 per day." At the contempt proceedings of February 26, 1990, the parties stipulated that "Mr. Dunham gave lessons from the airport in violation of the injunction [on] 165 days . . . ." The trial court then stated: "It is clear to this Court as I found previously, the plaintiff has violated the Court's injunction . . . . The penalty made the Court impose at that time a $500 per day court violation for 165 days, which would make a total fine of $82,500. The Court will grant some clemency to the plaintiff, however, and remit $200 per day or $33,000 making a fine of $49,500 to which would be added attorney fees of $10,000 and costs in the amount of $485.70." Such a calculation could never serve as the basis for an award of compensation to be paid to the complaining party.

---

ther questioning to establish his damages more precisely. Given the extent of Roger's contumacious conduct . . . the trial court's fixing of a fine approximating damages was not plain error."

"Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss . . . ." *DeMartino* v. *Monroe Little League, Inc.,* 192 Conn. 271, 278–79, 471 A.2d 638 (1984). "[S]uch a 'compensatory fine' must necessarily be limited to the actual damages suffered by the injured party as a result of the violation of the injunction"; *G. & C. Merriam Co.* v. *Webster Dictionary Co.,* 639 F.2d 29, 34 (1st Cir. 1980); and the "claim of actual damages must be established by competent evidence and the amount must not be arrived at by mere speculation or conjecture." *Babee-Tenda Corporation* v. *Scharco Mfg. Co.,* 156 F. Sup. 582, 588 (S.D.N.Y. 1957); see also *Broadview Chemical Corporation* v. *Loctite Corporation,* 311 F. Sup. 447, 449 (D. Conn. 1970). Because there was no evidence of the injured party's actual damages, I would reverse that portion of the judgment ordering the fine paid to the complainant and remand the case for the purpose of determining the actual damages he sustained.