[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO STRIKE
The plaintiff, Jacqueline Silverston, hereinafter ("plaintiff"), who was a secured creditor of George Flonnes, the prior owner of certain real property located on Route 44 in Pomfret known as the Inn at Gwyn Careg, brought this action against Norwich Savings CT Page 762 Society, hereinafter ("Norwich Savings") and individual officers of Norwich Savings based upon the foreclosure and subsequent sale by Norwich Savings of the aforementioned property.
On September 30, 1994, the plaintiff brought a three count complaint against Norwich, Savings and the following officers of Norwich Savings in their individual capacities: Daniel R. Dennis, Jr., Michael J. Hartl, James R. Brown, Daphne P. Cannata, Richard W. Dennison, James F. Dewey, Janet M. Brynildsen, Richard R. Cascio, Carolyn L. Fisher, Anthony A. Joyce, III, Lynne Michaels, Catherine L. Sarni, William J. Terwilliger, Mary Jo Wlodecki, and Richard A. Woerle. (Hereinafter "individual defendants".)
In the first count, which sounds in breach of contract, the plaintiff alleges the following: The plaintiff was a secured creditor of George Flonnes, a bankrupt. (The plaintiff obtained a judgment lien on the personal property on January 8, 1990 in the amount of $67,500.00 which was perfected by recording a UCC-1 with the secretary of state in the State of Connecticut relative to all of the personal property of Mr. Flonnes' business, the Inn at Gwyn Careg.) Thereafter, the defendant Norwich Savings requested permission of the Bankruptcy Court to sell the personal property of Flonnes at the Inn at Gwyn Careg. The plaintiff claims that the sale required the consent of all secured creditors to the personal property, which were Norwich Savings, the plaintiff and the Town of Pomfret. On or about May 1994, the plaintiff and the defendant Norwich Savings entered into an agreement where the plaintiff agreed to consent to the sale of the personal property of the bankrupt by his trustee in bankruptcy free and clear of all liens of creditors to a prospective buyer.
The plaintiff further claims that the stated purpose of her agreement with the defendant was to provide the defendant the means by which it could privately sell the personal property without any further road blocks by the debtor in possession, George Flonnes. The agreement further provided Norwich Savings the ability to sell the personal property and real property at the same time and in a timely fashion. The plaintiff alleges that at the time of the agreement, she was making offers to Norwich Savings for the acquisition of the real and personal property. She alleges that Norwich Savings acknowledged the offers and indicated that subsequent to the plaintiff's release of the lien, and completion of the pending foreclosure action, an agreement could be consummated, but at the time it did not own the property and could not negotiate for its transfer. CT Page 763
The plaintiff alleges that on July 6, 1994 a certificate of foreclosure issued giving title to Norwich Savings as of June 23, 1994. The plaintiff further claims that upon information and belief, Norwich Savings had already entered into an agreement between itself and Thoroughbred, LLC, for the sale of the real and personal property. The plaintiff claims that Norwich Savings breached its agreement with the plaintiff, and as a result, the plaintiff has been injured and otherwise damaged.
In the second count, which sounds in misrepresentation, the plaintiff incorporates paragraphs 1 through 13 of the first count and alleges the following: Norwich Savings misrepresented to the plaintiff, one or more material facts inducing the plaintiff to surrender, her rights as a secured lienholder of the personal property. The plaintiff further claims that Norwich Savings deceived the plaintiff by not disclosing its true intentions relative to the plaintiff and her release of her rights as a secured creditor of the real property. The plaintiff alleges that these misrepresentations were for the purpose of having the plaintiff consent to the private sale of the personal property. Furthermore, the plaintiff alleges that Norwich Savings, in May 1994, engaged in a scheme to obtain the consent from the plaintiff without ever having the intention to enter into substantive negotiations for the sale of the property. The plaintiff alleges that Norwich Savings made the misrepresentations and omissions of material facts described above with knowledge of their falsity. The plaintiff claims that she relied upon the honesty and good faith of Norwich Savings relative to the actions described above, and as a result, the plaintiff suffered damages.
In the third count, which is the subject of this motion to strike, the plaintiff incorporates paragraphs 1-22 of the complaint and alleges that the individual officers of Norwich Savings ("individual defendants") were negligent in failing to supervise their agents and/or employees in their dealings with the plaintiff and, as a result, breached their duty owed to the plaintiff to supervise their agents/employees. The plaintiff alleges that as a result of the aforementioned breach and negligent supervision by the defendants, the plaintiff has been damaged.
On November 10, 1994, the individual defendants filed a motion to strike the third count of the plaintiff's complaint on the ground that it "fails to set forth a legally sufficient cause of action for personal liability of the officers of the CT Page 764 defendant, Norwich Savings Society." Additionally, the individual defendants moved to strike the plaintiff's amended prayer for relief on the ground that it "does not correspond to the allegations of the complaint."
As required by Practice Book § 155, the defendant has filed a memorandum in support of its motion to strike, and the plaintiff has timely filed a memorandum in opposition.
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Mingachos v. CBS, Inc.,196 Conn. 91, 108 (1985). A motion to strike shall be granted if "the plaintiff's complaint [does not] sufficiently [state] a cognizable cause of action as a matter of law." Mora v. AetnaLife Casualty Ins. Co., 13 Conn. App. 208, 211 (1988). Similarly, a motion to strike may be filed to test "the legal sufficiency of any prayer for relief in any such complaint, counterclaim or cross-complaint . . . ." Practice Book § 152. A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted.) Mora v. Aetna Life Casualty Ins. Co., supra, 13 Conn. App. 208, 211 (1988). "A motion to strike is properly granted where a plaintiff's complaint, alleges legal conclusions unsupported by facts." Id.
"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Gordon v. Bridgeport HousingAuthority, 208 Conn. 161, 170 (1988). A motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged." (Internal quotation marks and; citations omitted.) Alarm Applications Co. v.Simsbury Volunteer Fire Co., 179 Conn. 541, 549-50 (1980).
Upon deciding a motion to strike, the trial court must construe the "plaintiff's complaint in [a] manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465, 471
(1991). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Mingachos v. CBS, Inc., supra, 196 Conn. 91,108-09 (1985).
"Practice Book § 154 . . . requires that a motion to CT Page 765 strike based on legal insufficiency distinctly specify the reason or reasons for each such claimed insufficiency." Blancato v. FeldsparCorporation, 203 Conn. 34, 36 n. 3 (1987). "A general statement in a motion to strike that the complaint does not state a claim on which relief can be granted is usually deemed not to comply with the requirements of Practice Book section 154." North Park MortgageServices, Inc. v. Pinette, 27 Conn. App. 628, 630 (1992). The Connecticut Supreme Court has explained that "[a] motion to strike that does not specify the grounds of insufficiency is fatally defective . . . ." Morris v. Hartford Courant Co., 200 Conn. 676,683, n. 5 (1986). Furthermore, "Practice Book § 155, which requires a motion to strike to be accompanied by an appropriate memorandum of law citing the legal authorities upon which the motion relies, does not dispense with the requirement of § 154 that the reasons for the claimed pleading deficiency be specified in the motion itself." Id. The Morris court explained, however, that because § 154 is not jurisdictional in nature, it will "consider the motion to strike in the form presented to the trial court." Id.
It is noted that in their motion to strike, the defendants did not to comply with § 154 in that they failed to state with specificity the grounds for the alleged insufficiency in the pleading. Because § 154 is not jurisdictional, however, the court may still consider the motion to strike in the form presented to it.
The individual defendants argue in their memorandum in support of their motion to strike that "the plaintiff's third count fails to set forth a legally sufficient cause of action for personal liability of the officers of the defendant, Norwich Savings Society."
"To hold a corporate officer personally liable for wrongdoing, there must be a sufficient factual basis for a court to pierce the corporate veil." Angelo Tomasso, Inc. v. Armor Construction Paving,Inc., 186 Conn. 544, 561 (1982). "A court may pierce the corporate veil only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." (Internal quotation marks and citations omitted.) SFAFolio Collections, Inc. v. Bannon, 217 Conn. 220, 230, cert. denied, ___ U.S. ___, 11 S.Ct. 2839, 115 L.Ed.2d 1008 (1991).
The Court in United Electrical Contr. v. Progress Bldrs., CT Page 76626 Conn. App. 749 (1992) explained when the corporate veil may be pierced under Connecticut law:
 [T]he corporate veil may be pierced under either the `instrumentality' or `identity' rules. Under the instrumentality rule, in any case but that of express agency, proof of three elements is required: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.
(Internal quotation marks and citations omitted.) The UnitedElectrical court also explained when the corporate veil may be pierced under the "identity" rule:
 [T]he corporate veil may be pierced when the plaintiff shows such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun, [and that] adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.
The plaintiff has failed to allege sufficient facts, which, if proven, would satisfy either the "instrumentality" or "identity" test warranting that the corporate existence of the Norwich Savings be disregarded. In the third count, the plaintiff merely alleges that the defendants were negligent in breaching their duty owed to the plaintiff to supervise their agents/employees. The plaintiff fails to allege "complete domination" of the finances and business practice of Norwich Savings, an integral element of the "instrumentality" test. Similarly, the plaintiff has failed to allege "a unity of interest and ownership" of the individual defendants and Norwich Savings which is a critical element of the identity test.
Since the plaintiff, in her complaint, has failed to allege sufficient facts to prove either the "instrumentality" or "identity" tests, the plaintiff has not alleged sufficient facts to support CT Page 767 a cause of action for personal liability of the individual officers of Norwich Savings. Therefore, the defendants' motion to strike count three of the complaint is granted.
The defendants next argue that the "plaintiff's amended prayer for relief does not correspond to the allegations of the complaint."
In the individual defendants' motion to strike the plaintiff's amended prayer for relief, they argue that "plaintiff's complaint does not allege a cause of action justifying rescission of an agreement between defendant, Norwich Savings Society and Thoroughbred, LLC." The defendants further argue that "[t]here is no allegation in the Complaint which if proven would entitle plaintiff to the requested relief." In opposition to the defendants' motion to strike the plaintiff's amended prayer for relief, the plaintiff points out that her allegations may constitute actionable fraud, and argues that "one who is defrauded (in an exchange of real estate) may be entitled to a rescission of the contract."
"A person who has been defrauded has the right to elect to rescind the contract and receive the entire value in return or elect to receive the entire value in return or elect to receive damages." Duska v.Middletown, 173 Conn. 124, 129 (1977). In the plaintiff's amended prayer for relief dated October 7, 1994, she claims (1) money damages in the amount of $15,000.00 or more and (2) the rescission of the transfer of title of the subject property by the defendant which took place on September 27, 1994.
The plaintiff's amended prayer for relief is legally sufficient because the plaintiff alleges, in her complaint, that the defendants intentionally misrepresented facts upon which the plaintiff relied in releasing her rights as a secured creditor of the personal property and agreeing to the private sale of the personal property. These facts, if proven, would show that the plaintiff has been defrauded, supporting a legally cognizable prayer for relief of rescission.
Finally, the defendant argues that Thoroughbred, LLC is a "necessary party" and "any decision rescinding the transfer cannot be fully determined without affecting its interests." In opposition, the plaintiff argues that "the defendant's premise that Thoroughbred, LLC is a; "necessary party" is erroneous because the plaintiff recorded a Lis Pendens on September 27, 1994 when Norwich Savings was the owner of the real property. The plaintiff argues that CT Page 768 General Statutes § 52-325 provides that the lis pendens provides notice of pendency of action to any person thereafter acquiring the property, and therefore, Thoroughbred, LLC is bound by all proceedings taken after the recording of the lis pendens.
General Statutes § 52-325 Notice of lis pendens provides, in pertinent part:
 Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action; and each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained, by descent or otherwise, shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the action. (Emphasis added.)
"A notice of lis pendens is appropriate in any case where the outcome of the case will in some way, either directly or indirectly, affect the title to or an interest in real property." Garcia v. BrooksStreet Associates, 209 Conn. 15, 22 (1988). "As [General Statutes] 52-325
(a) provides, the purpose of [notice of lis pendens] is to bind any subsequent purchaser or encumbrancer as if he were made a party to the action described in the lis pendens. [A] notice of lis pendens ensures that the [litigant's] claim cannot be defeated by a prejudgment transfer of the property. . . . [T]he lis pendens procedure provides security for payment of the claim pending final resolution of the case." (Citations and internal quotation marks omitted.) Dunham v. Dunham, 217 Conn. 24, 34 (1991).
The plaintiff filed a lis pendens on September 27, 1994, prior to the recording of the deed from Norwich Savings to Thoroughbred, LLC, giving notice of the pendency of a civil action between herself and Norwich Savings regarding the land in question. The notice of lis pendens bound Thoroughbred LLC, the subsequent purchaser, as if it were made a party to the civil action referenced in the lis pendens. A decision as to whether the transfer of the real estate from Norwich Savings to Thoroughbred, LLC should be rescinded can be fully determined without naming Thoroughbred, LLC as a party since the notice of lis pendens effectively makes Thoroughbred LLC a party to the action. Accordingly, the defendants' motion to strike the plaintiff's Amended Prayer for Relief is denied.
Potter, J. CT Page 769