[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTIONS NOTICED IN JOINT CASE MANAGEMENT AGREEMENT (#249). AND MOTIONS (#250) AND) (#260)
The marriage of the parties was dissolved by the court (Moran, J.) on July 22, 1994. There were two children issue of CT Page 9911 the marriage, Christina Catherine, born November 14, 1977, and Karen Lindsey, born August 17, 1982. At the time of dissolution, the court issued a temporary order for custody and visitation, which provided for joint legal custody, primary physical custody with the plaintiff, and visitation for the defendant. There was a division of property. Also, the court ordered the defendant to pay the plaintiff $7,000 per month as alimony until the death of the plaintiff, the death of the defendant, remarriage of the plaintiff or statutory cohabitation. The court also ordered child support in the amount of $1,500 per month for both children. Other dissolution orders will be set forth further herein as may be relevant.
On March 30, 1995, the parties entered into a parenting stipulation, which was made an order (Feinberg, J.) of the court (#172). The agreement and order provided, in sum, that the plaintiff would have specified parenting time with both daughters. On November 14, 1995 Christina turned 18 years of age.
On September 23, 1996, the court (Harrigan, J.) found an arrearage of $34,694.90 for alimony and support, plus $4,657.70 for attorney's fees and costs. The court also ordered that a QDRO be submitted for approval. See Motion for Contempt #183. The same court subsequently issued a capias against the defendant. The plaintiff filed another motion for contempt (#186). There was a hearing on that motion before this court on May 5, 1997. Both parties appeared. After hearing, the court granted the contempt, found an updated arrearage of $98,501.35, and additional fees of $4,500 plus costs. The court also issued orders concerning payment of the arrearage, execution of the QDRO, and life insurance.
The defendant later moved to vacate (#237) and dismiss (#239) the finding of contempt and the arrearages on subject matter jurisdictional grounds. These motions were denied by the court (Harrigan, J.) on May 27, 1998, by way of a written memorandum of decision (#246).
There remained outstanding a plethora of motions filed by each party at divers times in 1997. This court issued a case management order. Pursuant to that order, the parties entered into a joint case management agreement (#249). That agreement listed seven separate motions which the parties agreed were currently before the court and ready for a hearing. After the filing of the agreement, the court began hearing plaintiffs CT Page 9912 motion for contempt (#250) relating to parenting time issues on October 26, 1998.
This court held a hearing on the pending motions, including a continuation of motion #250, on March 3, 4 and 5, 1999. The plaintiff and her counsel appeared. The defendant did not appear, but he was represented by counsel. Nancy Close, Conservatrix of the estate of the defendant and a party, also appeared. She had previously been granted permission to be made a party defendant by the court (Harrigan, J.) (#222). Nancy Close, Conservatrix, was not represented by counsel. This court notes the non- appearance of the defendant, personally, only by way of preface and explanation. The court does not do so to admonish him. Also, the court does not intend to punish the defendant for his non- appearance.
The first motion heard by the court was defendant's "Motion to Set Aside the Order Entered September 23, 1996", dated May 2, 1997, and filed by the defendant pro se (#194). After hearing, the court orally denied the motion. The court continued the hearing as to the remaining motions, concluding them on March 5, 1999 and reserving decision. Subsequent thereto, the defendant appealed the denial of motion #194. The plaintiff moved to dismiss this appeal to the Appellate Court, and the dismissal was granted. The defendant filed a petition for certification to the Supreme Court, which was denied. Close v. Close,249 Conn. 929 (June 30, 1999). Also, the plaintiff had filed a postjudgment motion for attorney's fees (#260) in which she sought an award for fees to defend the appeal. This was heard and the court reserved decision, prior to the dismissal of the appeal by the Appellate Court.
This court now addresses the reserved motions,seriatim:
1. DEFENDANT'S MOTION FOR MODIFICATION OF ALIMONYAND/OR TERMINATION OF ALIMONY AND CHILD SUPPORT (#198)
The plaintiff and the defendant intermarried on June 28, 1969. As mentioned previously, there were two children issue of the marriage, Christina Catherine, born November 14, 1977 and Karen Lindsey, born August 17, 1982. The marriage of the parties was dissolved by the court (Moran, J.) on July 22, 1994.
This court has reviewed the court transcript of July 22, CT Page 9913 1994. This court has also reviewed the parties' financial affidavits submitted at the time of the dissolution and now.
The plaintiff is now 54 years old. At the time of the dissolution the plaintiff was not employed and had no income. She did not begin to work full time until January, 1998. Since then and until February 1999, she had a series of different jobs. Since February 1999, she has been employed as a certified and licensed dental hygienist here in Stamford. Based upon her current financial affidavit, the court finds that her gross income is $446 per week, net $339 per week. This is stated as an "average for past 13 months because of variations." On a more immediate basis, she has been working 18-35 hours per week, at $28, gross, per hour.
The defendant is 56 years old. The defendant's employment history has been much more complex. At the time of the dissolution, he was a lawyer at Dewey Ballantine in New York City. He had been there many years. His compensation and income were substantial. The defendant's estimated gross income for 1994 was $381,000 but after mandatory deductions was a net distribution of $295,000. After taxes, the defendant's net employment income was $139,000. The defendant also had other net income of $37,000 for total net income, 1994, of approximately $176,000.
The defendant has had health problems. He contracted Lyme disease. His current diagnosis is Lyme Disease Dementia. He has been treated for the disease. However, the disease did impair the defendant to the extent that he was not able to continue his employment, and he was terminated from Dewey Ballantine in September, 1996.
The defendant is not currently employed. He did not personally sign and swear to a financial affidavit at the time of these hearings in March, 1999. Also, as indicated previously, the defendant did not personally appear for these hearings. A financial affidavit was submitted by the defendant's conservatrix, Nancy Close. The conservatrix is also the defendant's present wife. The plaintiff moved to strike the affidavit. This court denied the motion.
This being said, the defendant's current financial picture is not simple. The financial affidavit itself is 13 pages in length, with 5 additional pages of attachments. Further, the only witness CT Page 9914 available to explain the defendant's financial situation and affidavit was Nancy Close, the defendant's conservatrix and wife. The court felt that she was somewhat biased on the financial matters. Plaintiffs counsel's examination of her, though, was especially useful. Also, those parts of the financial affidavit which she had no ability to explain, or familiarity with, were disregarded by the court. Based upon all the evidence, the court believes it had a sufficient understanding of the defendant's financial affairs.
For purposes of deciding alimony and support, the court finds that the defendant's gross income is $160,000 per year, less taxes payable, $75,000, and self employment tax, $15,000, for a net of approximately $70,000 per year.
CGS Section 46b-86 (a), provides in pertinent part that:
 "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . ."
In deciding a motion for modification, there is a two-part inquiry. First, the court must determine whether there has been a substantial change in circumstances warranting a modification of the existing order. If there has been, the court next determines what an appropriate alimony order currently is, taking into consideration all the statutory factors set forth in CGS section46b-82. Crowley v. Crowley, 46 Conn. App. 87, 92
(1997).
This court has considered all of the evidence in reaching the facts previously stated. It is persuaded that the defendant has demonstrated a substantial change in circumstances. This is not inconsistent with the trial court's further order that "retirement by the Defendant, by Mr. Close, will constitute a substantial change in circumstances permitting either party to petition the Court for reassessment . . ." Transcript, July 22, 1994, p. 12.
Based upon all of the foregoing, the court is persuaded that the defendant is entitled to some relief. Therefore, the court reduces periodic alimony to $3,500 per month retroactive to June, CT Page 9915 1997. Further, inasmuch as both children have resided with the defendant since before June, 1997, the defendant's obligation for child support is terminated, effective June, 1997. The court finds that the defendant has made payments totaling $15,000, subsequent to this court's judgment in May, 1997 and should be given credit for those amounts.
Further, the order of life insurance to secure the defendant's alimony obligation is modified from $1,000,000 to $500,000.
2. DEFENDANT'S MOTION FOR CHILD SUPPORT (JULY 28.1997) (#202)
In this motion, the defendant alleges that the parties' marriage was dissolved on July 22, 1994; that the court entered temporary orders for the parties to have joint custody of the minor children, with physical custody with the plaintiff; that since the time of the dissolution, Christina has reached the age of majority; that the custody orders were modified on March 30, 1995, giving physical custody of the minor child, Karen to the defendant; and finally, that the minor child, Karen currently resides with the defendant.
The court finds these allegations to be true. Karen has been living with the defendant since on or before the time of the modification, March 30, 1995. Karen is still a minor.
The court has previously found, on motion #198, that the plaintiff's net income is approximately $339 per week. The court has also found that the defendant's net income is approximately $70,000 per year, or $1,346 per week. The parties total net income is thus $1,685 per week. Therefore, the Connecticut Child Support and Arrearage Guidelines Regulations, section 46b-215a,et seq. do apply.
The court, therefore, calculates the presumed amount of support due by the plaintiff, the noncustodial parent, to the defendant, the custodial parent. The basic child support obligation for one child at these parties' net weekly income level, is $320. Section 46b-215a-2 (d). The plaintiff's decimal share of the parties' combined net weekly income is .20; the defendant's share is .80. Section 46b-215a-2 (b)(4). Therefore, the plaintiff's presumed share of the basic support obligation is $64 per week. The child support guidelines must be considered in CT Page 9916 all child support determinations, Savage v. Savage,25 Conn. App. 693 (1991), and there is a "rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support or payment on any arrearage or past due support to be ordered." CGS section 46b-215b(a). This court has considered the full mandate of section 46b-215b, including its reference to other statutes which must be considered.
The court orders the plaintiff to pay support in the sum of $64 per week, retroactive to January 1, 1998. The court uses this date because there was no reliable evidence that the plaintiff was gainfully employed prior to then. The arrearage resulting from this determination, $5,267 ($64 x 82.3 weeks), shall be set off, however, against the final determination of any arrearage due the plaintiff from the defendant. The court does this because application of the arrearage guidelines, which would have presumed a payment of about $13 per week on this arrearage, would be inequitable or inappropriate in this case. This is based upon the special equitable factors in this case. Section 46b-215a-5
(a) and (6)(2).
3. PLAINTIFF'S MOTION FOR CONTEMPT (AUGUST 2,1997) (#205)
This motion for contempt represents that the defendant has an arrearage of alimony and support over $100,000 due from the defendant, and that the defendant continues to withhold from her monthly payments after being held in contempt on May 5, 1997. Plaintiff requests that the defendant again be held in contempt, seeks an immediate and substantial payment to the plaintiff, and such other and further orders as the court deems appropriate.
In order to find a party in contempt of court, the court must find that there has been a willful violation of a court order.Connolly v. Connolly, 191 Conn. 468, 483 (1983). Here, that court order involves a payment of alimony and support. As stated previously, this court and Harrigan, J., have previously found arrearages; this court has previously adjudged the defendant in contempt for failure to pay back alimony and support. The arrearage as of May 5, 1997, was $103,001 including fees and costs. Additional arrearages have accrued as modified, however, by this decision. The defendant has paid only $15,000 to the plaintiff since the determination of the arrearage on May 5, 1997. CT Page 9917
This court finds that the defendant's failure to pay has been willful, and he is adjudged to be in contempt. The evidence offered by Dr. Anita Lopker, the defendant's physician, was unpersuasive on the argument that the defendant may not have the mental capacity to understand and comply with orders of the court for alimony and support. This court believed Dr. Lopker's testimony that the defendant had contracted Lyme disease, and that the effects of such had necessitated termination of his employment in 1996. That finding is a substantial predicate for this court granting the defendant's motion to modify alimony and support (#198). However, this court does not believe that the defendant's condition so impaired his mental capacity that he did not understand and could not comply with his financial obligations to the plaintiff.
The court also briefly addresses the role of Nancy Close, defendant's wife and conservatrix, in the handling of these financial matters. The conservatrix has been aware all along of the court orders for alimony and support. She has been aware that there has been no modification of the same. She has received substantial monies to or on behalf of the defendant. Even though some of these monies are not includible, in this court's view, for purposes of determining the defendant's current alimony and support obligation, they are assets of the defendant subject to use in satisfaction of the defendant's liabilities to the plaintiff. Nancy Close understood that, as the defendant's conservatrix, she was under an obligation to pay the defendant's debts. She testified that she did not pay these debts, because of various motions to set aside the arrearages (#194) and to modify (#198). This belief was not bonafide.
Moreover, the defendant has had the ability to satisfy these arrearages. The court examines the defendant's financial affidavit, for purposes of finding sources to satisfy some or all of this arrearage. Many of these assets are substantial and unencumbered. Other assets are, again, substantial but apparently encumbered by their assignment as collateral for loans made by others, primarily the defendant's spouse and conservatrix, Nancy Close. The defendant has the ability to pay.
Accordingly, plaintiffs motion for contempt is granted.
4. PLAINTIFF'S MOTION FOR CONTEMPT (OCTOBER 20,1997) (#217) THE DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FORCT Page 9918CONTEMPT
At the time of the dissolution in 1994, the defendant directly owned an interest in an entity called Vale Energy Corporation (hereinafter "Vale"). The court (Moran, J.) ordered that Vale was to be "shared equally" by the parties. The plaintiff was entitled to receive one-half of the gross income from Vale.
In the instant motion for contempt, plaintiff alleges that between July 22, 1994 and August, 1995, the defendant received distributions from Vale totaling $49,213; that defendant was to remit one-half of that to plaintiff; and that defendant has not done the same. Therefore, plaintiff requests a finding of contempt and that defendant be ordered to pay one-half of the distribution, $24,606.50 plus interest.
There was conflicting evidence as to the actual amount of the Vale distribution and what the defendant paid the plaintiff. This court finds that the more credible evidence is the Vale distribution totaled $49,213.50. In June, 1995, the defendant paid by wire transfer to the plaintiff the sum of $29,806. $21,306. of this was on account of the Vale distribution; the balance of $8,500 was for the June, 1995 alimony and support obligation.
The court does not find the defendant in contempt on this motion. There is, however, a shortfall on the Vale distribution to the plaintiff, resulting in an arrearage to her of $3,300.50. The court finds an arrearage in this sum, plus 10% interest thereon since July, 1995.
5. DEFENDANT'S MOTION FOR CONTEMPT (NOVEMBER 11,1997) (#227)
There was a court order at the time of the dissolution that plaintiff pay 50% of any and all unreimbursed or uncovered medical and/or dental expenses incurred by or on behalf of the parties' two minor children. Additionally, plaintiff was also ordered to pay 50% of the first $1,000 of any deductible. The defendant moves that the plaintiff be adjudged in contempt for her failure to comply with these orders.
Again, here, there was conflicting evidence concerning the amount of medical bills and payments the plaintiff had made CT Page 9919 against them. The court finds, however, that the plaintiffs share of medical bills is $6,000. That sum is not established simply through the date of the motion, November 11, 1997, but through the date of this hearing in March, 1999. In the words of Nancy Close, at some point she "stopped calculating" and does not know what plaintiff would owe. Also, this court has thoroughly reviewed the transcript of the court (Harrigan, J.) on September 23, 1996. The transcript is not clear and definitive as to whether the court allowed plaintiff to offer a set-off to the defendant for the sum of her unpaid medical bills. This court cannot find that the court did allow a set-off for a sum of unpaid medical bills. Therefore, $6,000 is what the plaintiff owes.
The court denies the contempt, finds this arrearage, and declines to award statutory interest, fees or costs in the bringing of this motion.
6. PLAINTIFF'S MOTION FOR CONTEMPT (NOVEMBER 10,1997) (#228)
The dissolution orders also required that the defendant was to "provide a million dollars insurance coverage for the benefit of the wife as long as he is obligated to provide alimony and/or support as herein provided." This motion for contempt alleges that the defendant has failed to provide such insurance or to provide evidence of the same to the plaintiff.
This court finds that up until May, 1998 there was at best only $150,000 in life coverage on the defendant naming the plaintiff as a beneficiary. It was not until May, 1998, that the defendant secured a $2 million life policy naming the plaintiff as beneficiary of one-half thereof. The defendant, Nancy Close, owns the policy as conservatrix. Premiums were paid up through the date of the hearing.
The defendant is clearly in contempt for failure to provide the required amount of insurance, through May, 1998, by the admissions of his own conservatrix. Apparently the defendant took the position that insurance naming his own estate as beneficiary, would satisfy the court's order. The court finds that it did not. Such an arrangement would inure to the benefit of the defendant's estate, but not directly to the benefit of the plaintiff. The plaintiff would be in the position of a simple creditor of the defendant's estate upon the defendant's demise. CT Page 9920
Therefore, the defendant is adjudged to be in contempt. The policy is required to be maintained in the form as secured by the defendant in May, 1998. There shall be no change in ownership without prior court approval. Also, the defendant is required to have the insurer immediately notify the plaintiff upon any change of ownership of the policy, change of beneficiary, or any unpaid premiums of the same.
7. PLAINTIFF'S MOTION FOR CONTEMPT (OCTOBER 15,1998) (#250)
This motion for contempt relates to, in brief, plaintiffs claims that she has been denied parenting time to which she is entitled under a stipulation and order of March 30, 1995. (Feinberg, J.) (#172). This court started a hearing on the motion on October 26, 1999. It was ultimately continued to be heard among the previous motions, between March 3 through 5, 1999.
The original dissolution orders provided for joint legal custody, physical custody with the plaintiff and reasonable and flexible visitation for the defendant. This was modified by order # 172. By that order, the parties retained joint custody of the daughters, Christina, then age 17, and Karen, then age 12. As to Christina, the mother was to have "reasonable and flexible parenting time . . . as agreed upon and arranged by the mother and daughter." As to Karen, the plaintiff was to have a specific schedule of parenting time, and there were also provisions for a neutral third party therapist to assist with, interalia, family therapy and long-term co-parenting.
In response to this motion for contempt, the defendant has filed an objection (#151), an amended motion for modification, postjudgment (#252), which alleges a substantial change in circumstances since the March 30, 1995 orders and requests that the court award the defendant sole legal and physical custody of the minor child, Karen, and a motion to appoint counsel for the minor child post judgement (#257), which was denied by this court without prejudice, on November 23, 1998 (#258).
Karen is now 16, and will turn 17 on August 17, 1999. She has lived with the defendant since on or prior to March 30, 1995. Following that date, both parties continued to live in Greenwich. The court finds that some therapy and visitation occurred subsequent to March, 1995, but it began to dwindle somewhat. At CT Page 9921 some point the neutral third party therapist was terminated probably by the plaintiff. There were some conversations between the plaintiff and the defendant's new wife, Nancy Close, in 1998 about she, the defendant, and the children relocating to Florida. However, this court believes that none of these conversations were sufficient to definitively alert the plaintiff about a planned relocation. The plaintiff attempted to exercise visitation with Karen in September, 1998, and at that time discovered that the defendant and his family had left Greenwich. The defendant's Greenwich residence was on the market for sale. The plaintiff determined that the defendant and his family had, in fact, moved to Florida. When the plaintiff attempted to contact the defendant and Karen in Florida, she was told that her calls were not welcome. The plaintiff has not seen Karen since or some time before June, 1998.
This is a very unfortunate situation. The court believes that the following orders are appropriate, under the circumstances. Upon reconsideration, an attorney is appointed to represent the interests of the minor child. That attorney shall be Attorney Catherine Whelan, subject to her acceptance. She may petition this court for fees and allocation thereof. The parties and their attorneys are ordered to contact Roger Grenier of Family Services in Stamford, or his designee, for mediation of the parenting and visitation issues. Contact and mediation may be done telephonically because of the fact that the defendant and Karen now live in Florida. However, in the event that such mediation is not successful all parties and counsel are ordered to report to family services on Thursday, August 19, 1999, for mediation. Unless specifically excused from doing so by the court, the defendant shall also produce Karen for this mediation session. In the event that this mediation is still unsuccessful the court shall, on August 19th, schedule a hearing on the pending motions. This should include a continuation of the hearing on plaintiffs motion for contempt, and defendant's amended motion to modify. Counsel shall be heard before final scheduling is determined.
8. PLAINTIFF'S POSTJUDGMENT MOTION FOR ATTORNEY'SFEES (APRIL 2, 1999) (#260)
The plaintiff has made a motion for an award of attorney's fees to defend the appeal previously mentioned, filed by the defendant. This motion was heard on a subsequent short calendar, and the court reserved decision. CT Page 9922
Given the fact that the appeal was later dismissed and petition for certification denied, the court believes that it is more appropriate to have the plaintiff reclaim this motion and submit an affidavit of fees and costs actually incurred in defense of defendant's appeal. The court will then hear the parties and enter an order.
In conclusion, and in addition to any orders previously entered herein, the parties shall do the following:
(1) Calculate and submit a final arrearage due the plaintiff by the defendants, net of any monies due the defendants, all as consistent with this decision;
(2) Submit final affidavits of fees and costs;
(3) Submit proposed claims for relief for satisfaction of defendant's arrearage, all as consistent with this decision.
The court retains jurisdiction to enter further orders consistent with this decision.
So Ordered.
KAVANEWSKY, J.